700 So.2d 228 (1997)
Curtis Sylvester DAVIS
v.
GLEN EAGLE SHIP MANAGEMENT CORPORATION, Keystone Ship Management Corporation and M/V Chesapeake City.
No. 97-C-0878.
Court of Appeal of Louisiana, Fourth Circuit.
August 27, 1997.
*230 Ashton R. O'Dwyer, Jr., Brandon E. Mary, Lemle & Kelleher, L.L.P., New Orleans, for Relator Denholm Ship Management USA, Inc.
Stephen M. Wiles, Marrero, and Timothy J. Falcon, Jeremiah A. Sprague, Falcon Law Firm, Marrero, for Respondent Curtis Sylvester Davis.
Before LOBRANO, PLOTKIN and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Curtis Davis sued Gleneagle Ship Management Corporation, Keystone Ship Management Corporation and the M/V Chesapeake City under the Jones Act for damages allegedly sustained when he was electrocuted while working on the vessel in the Middle East. Denholm Ship Management USA, Inc. (Denholm), formerly Gleneagle Ship Management Co., Inc., seeks supervisory review of the trial court's denial of Denholm's Exceptions of improper venue, insufficient service of process and lack of personal jurisdiction.

ANALYSIS

EXCEPTION OF IMPROPER VENUE
Under the provisions of Louisiana's Long Arm Statute, venue is proper in the parish where the plaintiff is domiciled, or in any parish of proper venue under any provision of the Louisiana Code of Civil Procedure other than Article 42. La. R.S. 13:3203. Denholm contends that Davis failed to meet his burden of proving that he was domiciled in Orleans Parish on 23 August 1995, when he filed suit. Residence and domicile are not synonymous, and a person can have several residences, but only one domicile. Messer v. London, 438 So.2d 546 (La.1983). A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place. La. C.C. art. 38; La. C.C.P. art. 1234; Veillon v. Veillon, 517 So.2d 936, 940 (La.App. 3rd Cir.), writ denied, 519 So.2d 105 (La.1987). A person's domicile of origin continues until another is acquired. Blackwell v. Blackwell, 606 So.2d 1355, 1358 (La.App. 2nd Cir.1992). A change in domicile requires the physical presence of the individual in the new domicile coupled with a present intent to permanently reside in the new domicile. La. C.C. art. 41; Blackwell v. Blackwell, 606 So.2d at 1358.
An intention to change domicile may be proved by an express declaration in writing registered in the parishes of the old and new residences or, in the absence of a declaration, by the circumstances surrounding the residence. La. C.C. arts. 42 and 43; Autin v. Terrebonne, 612 So.2d 107 (La.App. 1 Cir.), writ denied, 604 So.2d 954 (La.1992).
In establishing domicile, intent is based on the actual state of facts and not what one declares them to be. Sheets v. Sheets, 612 So.2d 842, 844 (La.App. 1st Cir. 1992). The circumstances indicating establishment of a domicile include where a person sleeps, takes his meals, has established his household, and surrounds himself with family and the comforts of domestic life. Id.
Domicile is an issue of fact to be determined on a case-by-case inquiry. Succession of Barnes, 490 So.2d 630, 631 (La. App. 2nd Cir.1986). As in any case, the factual findings of the trial court will not be disturbed on appeal unless clearly wrong. Autin, 612 So.2d at 108. Where the documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Ferrell v. Fireman's Fund Ins. Co., 94-1252 p. 5 (La.2/20/95), 650 So.2d 742, 746.
The evidence relating to Davis's domicile conflicted substantially. Davis submitted the following evidence of domicile at 2723 Acacia Street in Orleans Parish:
1. Affidavit executed in connection with this litigation;
*231 2. Affidavit executed on 28 August 1996 in connection with divorce proceedings;
3. Deposition testimony that he lived at 2723 Acacia Street through the end of September 1995 when he moved to Edenborn Avenue in Jefferson Parish;
4. Counsel argues that on 7 September 1995 Davis was personally served at 2723 Acacia Street with notice to appear in juvenile court for a child support hearing.
Denholm submitted the following evidence of residence in Jefferson Parish:
1. Records from Entergy New Orleans, Inc., showing Calvin F. Duncan to be responsible for utility service at the Acacia Street home;
2. Bellsouth records reflecting no telephone service to the Acacia Street home from 1 January 1995 through 9 November 1995;
3. Cox Cable records showing Calvin F. Duncan was provided cable service at the Acacia Street home through 14 March 1995, whereupon service was discontinued until 1996;
4. Davis's deposition testimony that he was living in Jefferson Parish in August of 1996;
5. Davis's 14 October 1995 application to purchase a vehicle, listing his address as 2209 Edenborn and claiming to have lived at that address for two months;
6. Davis's 5 September 1995 application for FHA assistance listing his address as 3565 Martinique Drive in Kenner;
7. Davis's statement to Dr. Harold Ginzberg on 8 March 1996 that he had been living with his wife for over two and one-half years, currently on Edenborn Avenue and previously on Martinique drive.
In light of the conflicting evidence, the trial court chose to accept Davis's testimony that he resided on Acacia Street in Orleans Parish in August of 1995. The trial court's findings should not be reversed unless such findings are clearly wrong. The trial court made a credibility determination that Davis resided in Orleans Parish at the time the petition was filed but moved shortly thereafter. The trial court's ruling is not manifestly erroneous and is supported by the record. We find no error in the trial court's denial of Denholm's exception of improper venue.

EXCEPTION OF INSUFFICIENT SERVICE OF PROCESS
Denholm contends the service of process was insufficient because the original petition and citation were mailed to the wrong address. La. R.S. 13:3204 provides, in pertinent part, that a certified copy of the citation and of the petition in a suit under R.S. 13:3201 shall be sent by plaintiff to the defendant by registered or certified mail.
Counsel for Davis mailed the petition and citation, by certified mail, for all defendants to Keystone's address. Davis believed then that Keystone was Gleneagle's successor-in-interest. Subsequently, Davis amended his petition substituting Denholm for Gleneagle and mailed the amended petition, the original petition and citation, through certified mail, to Denholm's correct address on November 14, 1996. Davis contends that since citation and service was correctly effected upon Denholm on November 14, 1996, this exception is moot[1]. We agree.

EXCEPTION OF LACK OF PERSONAL JURISDICTION
Denholm claims it is not subject to the personal jurisdiction of the Louisiana courts because it is a Delaware corporation with principal place of business in Texas, and lacks the minimum contacts with the State of Louisiana required under the due process clause of the United States Constitution.
Due process requires that in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *232 Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
In interpreting the due process clause, the United States Supreme Court has recognized a distinction between general and specific personal jurisdiction. When a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising specific jurisdiction over the defendant; when the suit does not arise out of and is not related to the defendant's contacts with the forum, the State is exercising general jurisdiction over the defendant. Burger King Corporation v. Rudzewicz, 471 U.S. at 473, ns. 8, 9 and 15, 105 S.Ct. at 2182, ns. 8, 9 and 15; Helicopteros, 466 U.S. at 414, 104 S.Ct. at 1872.
Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the requirement of meaningful contacts is satisfied if the defendant has purposefully directed his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that arise out of or relate to those activities. Burger King Corp., supra; Helicopteros, supra.
Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2185.
The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there. International Shoe Co., 326 U.S. at 317, 66 S.Ct. at 158. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, at least where that interest is not adequately protected by the plaintiff's power to choose the forum, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2184.
The Louisiana Supreme Court in deReyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 109 (La.1991) determined that the two part test used in specific jurisdiction cases should also be applied in general jurisdiction cases. deReyes, 586 So.2d at 109.
In the present case, Denholm is a Delaware corporation with its principal place of business in Texas and has no offices, employees, agents or registered agents for service of process in Louisiana. The vessel never called upon any ports in Louisiana or the United States and was restricted to trade between ports of call in the Middle East.
Davis argues that Denholm has sufficient contacts through the number of seamen it has recruited and hired in the state of Louisiana. Over a period of four years, approximately 116 of the 1,330 seamen, or nine percent, hired by Denholm were from Louisiana. Denholm counters with the argument that it did not approach the seamen, advertise or hold interviews in Louisiana. Denholm had a contract with the International Organization of Masters, Mates and Pilots, whose headquarters is in Baltimore, Maryland. Under the agreement, Denholm informed the union when seamen were needed. The union selected members who fit the qualifications needed by the defendant and submitted those members for hiring. The union sent Denholm's requests to its regional offices, one of which was located in Jefferson Parish. Once the seamen were approved, the seamen were required to submit to a pre-employment physical by doctors selected by Denholm. In New Orleans, Denholm sent the seamen to the "Carrollton Clinic" and *233 paid the physicians at the Carrollton Clinic for the physical examinations conducted on the seamen. Denholm also paid for airline tickets for the seamen who were subsequently hired. These prepaid tickets were picked up by the seamen at the New Orleans International Airport. Travel pay for the seamen began on their first day of travel.
We find that Denholm maintains contacts with and directs its activities towards citizens of the state of Louisiana. It pays New Orleans doctors for physical examinations conducted on the seamen selected by the union and hired by Denholm. It provides airline tickets for its Louisiana seamen at the New Orleans International Airport. It begins to pay the Louisiana seamen from their first day of travel in Louisiana. While it did not advertise for, interview or recruit employees in the state of Louisiana, Denholm knew the union had a regional office in Louisiana and it was likely that seamen would be recruited from Louisiana. Denholm planned for such recruitment when it contracted with the physicians with the Carrollton Clinic to perform the physical examinations on the seamen selected for its ships.
The trial court did not err in its conclusion that Denholm had sufficient minimum contacts with the state of Louisiana and correctly denied the defendant's exception of lack of personal jurisdiction.
WRIT DENIED.
NOTES
[1] Denholm does not raise issues of timeliness or prejudice.