45 So.3d 191 (2010)
Judith S. SCAGLIONE and Raymond C. Doran, Jr.
v.
Jeanne Nunez JUNEAU, Individually and in her Capacity as Candidate for the Office of Circuit Judge for the Fourth Circuit Court of Appeals, and Lena R. Torres, in her Capacity as Clerk of Court for the Thirty-Fourth Judicial District Court for the Parish of St. Bernard.
No. 2010-CA-1109.
Court of Appeal of Louisiana, Fourth Circuit.
August 4, 2010.
Writ Denied August 9, 2010.
*192 Peter J. Butler, Jr., Richard G. Passler, Breazeale Sachse & Wilson, LLP, New Orleans, LA, and David L. Colvin, Jeffery P. Brothers, Travis J. Causey, Jr., David *193 R. Aden, Ashley J. Becnel, The Colvin Law Firm, Gretna, LA, and Paul A. Tabary III, Dysart & Tabary, L.L.P., Chalmette, LA, for Plaintiffs/Appellants.
Franz L. Zibilich, Metairie, LA, and Leonard L. Levenson, Christian W. Helmke, Colleen Boyle Gannon, New Orleans, LA, for Defendant/Appellee, Jeanne Nunez Juneau.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY, Judge ROLAND L. BELSOME, Judge PAUL A. BONIN).
PAUL A. BONIN, Judge.
Two registered voters[1] of St. Bernard Parish timely filed an action against Jeanne Nunez Juneau by which they challenged her candidacy for the office of judge of this court.[2] After a full trial on the merits, the trial judge found that Ms. Juneau possessed the qualifications required of a candidate and dismissed the voters' action. Because we conclude that the trial judge is not clearly wrong in his factual finding that Ms. Juneau had sufficiently established her domicile in St. Bernard Parish, and, further, that his finding is reasonable, we affirm. We explain below in greater detail our reasons.

I
We discuss in this Part our authority to act in this matter.
La. Const. art. V, § 9 provides in pertinent part that "[e]ach circuit [court of appeal] shall be divided into at least three districts, and at least one judge shall be elected from each." The fourth circuit is divided into three districts. La. R.S. 13:312. Ms. Juneau is a candidate for the third district of the fourth circuit court of appeal which is composed of the Parish of St. Bernard. La. R.S. 13:312(4)(b). Only one judge is exclusively elected from the third district "by the qualified electors thereof." La. R.S. 13:312.1 D. The challengers in this case are registered voters in St. Bernard Parish and are qualified to vote in the election scheduled later this year to fill the office of judge of this court. La. R.S. 18:491 A.
This action was properly commenced in the district court for St. Bernard Parish. La. R.S. 18:1403-1404 A(1). An appeal from an adverse judgment of that district court lies to this court. La. Const. art. V, § 10. We are required in all election contests involving the office of judge of a court of appeal to sit en banc. La. R.S. 18:1409 H. See Pattan v. Fields, 95-2342 (La.9/25/95), 661 So.2d 142.
At first blush one could construe Pattan, supra, to require en banc candidacy disputes to be decided by a majority of elected membership of the court. However, we find it significant that in Pattan there is no reference to any intermediate appellate judge having been recused, only that "three were noted as not participating and one judge not accounted for." Id. We are a court of twelve elected judges. La. R.S. 13:312.1 D. Six judges of our court have recused themselves sua sponte.[3] "A majority of the judges sitting in a case must concur to render judgment." La. *194 Const. art. V, § 8(B). Thus, the remaining six elected judges constitute the en banc, and a majority of four votes is required to render a decision. See Rainey v. Entergy Gulf States, Inc., 09-0572, p. 13 (La.3/16/10), 35 So.3d 215, 224, which deals specifically with the number of votes necessary to decide an en banc case where judges have recused. An even division of votes among the sitting elected judges of this court results in a judgment which effectively allows to stand the judgment of the district court. Williams v. Fahrenholtz, 08-0961, p. 8 (La.App.7/25/08), 990 So.2d 99, 105, writ denied 08-1680 (La.7/30/08), 986 So.2d 671.

II
In this Part we address the qualifications for the specific office which Ms. Juneau seeks. La. Const. art. V, § 24(A) establishes those qualifications: "A judge of ... a court of appeal ... shall have been domiciled in the respective district, circuit, or parish for one year preceding election and shall have been admitted to the practice of law in the state for at least the number of years specified as follows:... [f]or the supreme court or a court of appeals [sic]ten years." The challengers do not object to the sufficiency of Ms. Juneau's qualification of her admission to the practice of law for at least ten years; the record is uncontroverted that she has been admitted to the practice of law since 1997. The challengers limit their objection to Ms. Juneau's candidacy on the sole claim that she has not been domiciled in St. Bernard Parish the required one year.[4]See Matassa v. Jasmine, 10-1298 (La.App. 1 Cir. 7/22/10), 42 So.3d 1157, writ denied 10-1729 (La.7/26/10), 39 So.3d 599.
La. Civil Code art. 38 provides, "The domicile of a natural person is the place of his habitual residence."[5] La. Civil Code art. 39 further provides that
A natural person may reside in several places but may not have more than one domicile. In the absence of habitual residence, any place of residence may be considered one's domicile at the option of persons whose interests are affected.
La. Civil Code art. 44 sets out that
Domicile is maintained until acquisition of a new domicile. A natural person changes domicile when he moves his residence to another location with the *195 intent to make that location his habitual residence.
Finally, La. Civil Code art. 45 now[6] establishes that
Proof of one's intent to establish or change domicile depends on the circumstances. A sworn declaration of intent recorded in the parishes from which and to which he intends to move may be considered as evidence of intent.
This Court has previously described the distinction between "residence" and "domicile," the following way:
"Residence" is not a specific legal term. It is in common usage and has a variety of meanings. One may have a residence in a home, institution, town, city, parish, state, country, continent, etc. The term is nebulous and has no precise meaning. A person's residence is his dwelling place, however temporary, and regardless of whether he intends it to be his permanent home. In contrast, domicile is where one makes his habitual residence. Domicile should not be confused with residence. Residence and domicile are not synonymous, and a person can have several residences but only one domicile.
Gauthier v. Benson, 95-1730 (La.App. 4 Cir. 1/11/96), 667 So.2d 1181, 1183 (citations omitted). A person's domicile has been defined by our jurisprudence as the place wherein he makes his habitual residence, which "essentially consists of two elements, namely residence and intent to remain in place." Davis v. Eagle Ship Management Corp., 97-0878 (La.App. 4 Cir. 8/27/97), 700 So.2d 228, 230. Finally, a change in domicile will require "the physical presence of the individual in the new domicile coupled with a present intent to permanently reside in the new domicile." Id.
"In an election contest, the person objecting to the candidacy bears the burden of proving the candidate is disqualified." Becker v. Dean, 03-2493, p. 6-7, (La.9/18/03), 854 So.2d 864, 869. "Thus, where a particular domicile is required for candidacy, the burden of proof rests upon the party objecting to the candidacy to show a lack of domicile." Becker, Id.; Pattan v. Fields, 95-2375 (La.9/28/95), 661 So.2d 1320, 1321.
A trial judge's conclusion regarding a person's domicile (or change of domicile) is "clearly a factual finding subject to the manifest error standard of review." Steinhardt v. Batt, 00-0328, p. 2 (La.App. 4 Cir. 2/11/00), 753 So.2d 928, 930.
Longstanding case law from this court demands that courts of appeal give great deference to a trier of fact's factual findings based on credibility judgments. See Rosell v. ESCO, 549 So.2d 840, 845 (La.1989). See also Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The principles set forth in Rosell have been uniformly affirmed in numerous cases since it was issued. However, even in Rosell, we stated that "where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of *196 appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." Id.

Landiak v. Richmond, 05-0768 p. 19 (La., 3/24/05), 899 So.2d 535, 548-49.

III
We now address in this Part the facts which were developed in the trial court.
Ms. Juneau was born and raised in St. Bernard Parish. Around the time of her marriage in 1997, she and her husband purchased a home in St. Tammany Parish. They started a family and acquired a new home in St. Tammany which they considered their domicile until mid-June 2009. Ms. Juneau discussed with her husband, Timmy Juneau, other family members, and close friends her professional ambition to seek judicial office in her native parish. In mid-June 2009, observing that a judicial vacancy might soon occur, Ms. Juneau decided to relocate to St. Bernard Parish and change her domicile to that parish. She also expressed that she missed her extended family in the parish and wanted to be closer to them.
She obtained the assistance of two of her first cousins. One cousin owned a vacant lot on Delacroix Island where his home had stood before the storm in 2005; he also had a spacious fifth-wheel recreational vehicle which he agreed to move from Picayune, Mississippi onto his lot so that Ms. Juneau could live there. Once it was transported, her other cousin, who lived next door to the vacant lot, hooked it up to his electrical and water supply. These cousins and other family members testified that, beginning in June 2009, Ms. Juneau spent three to four nights a week in the RV; sometimes her husband and children would join her overnight on the island.
On November 12, 2009, Ms. Juneau and her husband executed an agreement to purchase a home on Pakenham Drive in St. Bernard Parish. The act of sale was passed on December 7, 2009. During this same period, Ms. Juneau informed the tax assessor for St. Tammany Parish that she was not claiming a homestead exemption for the tax year 2009 for her home in that parish. She later paid the full ad valorem tax on that property. On December 16, 2009, the local government issued her a building permit for the restoration or renovation of the Pakenham Drive home.
In February 2010, the RV was brought from Delacroix Island to Pakenham Drive and hooked up to utilities at that location. Around that same time Ms. Juneau changed her voter's registration from St. Tammany Parish to St. Bernard Parish. (She last voted in St. Tammany Parish in November 2008.) Also, in February 2010, she changed the address on her Louisiana driver's license and vehicle registration to Pakenham Drive. She was observed by family members living on Pakenham Drive. Neighbors disagreed on whether or how often or for what reason she was observed at the Pakenham Drive property. One neighbor described that he regularly observed her living at the property and often observed her husband and children from Mardi Gras 2010 until the trial of this matter.
From June 2009 through the time of the trial, Ms. Juneau also spent nights at her home in Lacombe. The outward appearance of the home remained unchanged to visitors, and the family often congregated there for recreation. Mr. Juneau's mother shared in childcare duties, such as carpooling when school was in session. During this period Ms. Juneau on some occasions executed powers of attorney, an act of sale, and an act of mortgage in which she declared that she was living and residing with her husband at the Lacombe address; at no time did she execute a notarial *197 document during this period which identified her living in St. Bernard Parish. Not until May 2010, which was her first opportunity, did Ms. Juneau change her address information with the Louisiana State Bar Association.
On July 9, 2010, she executed a sworn affidavit that her domicile address was the Pakenham Drive location.
The trial judge concluded that although the challengers had established a prima facie case that Ms. Juneau had been domiciled in St. Tammany Parish Ms. Juneau had changed her domicile to St. Bernard Parish as early as mid-June 2009 and, therefore, met the constitutional requirement of a one-year domicile.

IV
In this Part we now turn to a consideration of the Louisiana Supreme Court's important decision in Landiak v. Richmond, supra, which rejected a candidate for public office (in that case the New Orleans City Council) for not meeting the domicile qualification. We consider Landiak at this point because its result is rare, its evidence is unique, and it is the sole support for the dissent's argument to reject the trial judge's finding of fact that Ms. Juneau meets the domicile qualification for the office which she seeks.
To place the decision of Landiak in the proper context, we look to the opening statement in the opinion by then-Chief Justice Calogero:
In the cases heretofore decided by this court on candidate qualification, we have assiduously respected the principle that the law favors candidacy and must be liberally construed so as to promote rather than defeat candidacy.... No previous case in this Court has quite measured up to this one in the abundance of credible evidence and supportable facts showing that the challenged candidate for public office does not comply with the legally-required domicile component. Although doubt must be resolved in favor of allowing the candidate to run, the documentary and objective evidence in this case leaves no doubt that the candidate is not qualified for the office he seeks.
Landiak, 05-0758, p. 1, 899 So.2d at 538 (emphasis supplied).
The opinion focused on two decisive items of documentary evidence in rejecting the candidacy:
First, records submitted in evidence indicate that Mr. Richmond continued to claim a Louisiana homestead exemption on 4809 Eastview Drive through the end of 2004.... That being the case, Mr. Richmond's act of signing the 2004 homestead application form is strong evidence that he continued to consider 4809 Eastview Drive his domicile at least through August 1, 2003.
Second, and perhaps even more importantly, Mr. Richmond certified in his sworn, notarized "Notice of Candidacy" for election to the office of State Representative 101st Representative District, filed on September 19, 2003, that his "domicile address" was 4809 Eastview Drive. Mr. Richmond's September 19, 2003 statement under oath is positive proof of his intent concerning domicile on that date. Those two pieces of evidence clearly show that Mr. Richmond continued to consider the 4809 Eastview Drive as his "principal establishment" at least through September 9, 2003.

Landiak, 05-0758, p. 20, 899 So.2d at 549 (emphasis supplied).
Then-Justice Kimball in her concurring opinion further explained the uniqueness of Landiak by contrasting it with the Supreme Court's earlier decision in Dixon v. Hughes, 587 So.2d 679 (La.1991):

*198 While the Dixon case involved almost identical evidence regarding the candidate's domicile, I believe it is distinguishable because the notice of candidacy form at issue in that case was not filed within the relevant one year period. In my view, the sworn and notarized notice of candidacy form filed within the two year period immediately preceding the election, which was the relevant period in this case, was a critical piece of evidence that sufficiently established the candidate's domicile ...
Landiak, 05-0758, p. 22, 899 So.2d at 550 (Kimball, J., concurring).
In our case, the documentary evidence does not approach Dixon, much less Landiak. When Landiak was before our court the dissenters too identified the quality of the documentary evidence present in that case which distinguished Landiak from other cases; as they observed, such evidence compelled a factual finding of disqualification and the trial judge's ignoring of the evidence of the homestead exemption and the sworn domicile declarations was manifestly erroneous. Landiak v. Richmond, 05-0385 (La.App. 4 Cir. 3/17/05), 900 So.2d 191, 195 (Kirby and Belsome, JJ, dissenting).
First, there is absolutely no documentary evidence that Ms. Juneau applied for a St. Tammany Parish homestead exemption after she moved to Delacroix Island. The uncontroverted evidence is that she paid the full St. Tammany Parish ad valorem tax on her property for the entire year of 2009.
Second, and we think most critical, is that after mid-June 2009 Ms. Juneau never made a sworn declaration that her domicile was in a place other than St. Bernard Parish. The documentary evidence that she gave sworn declarations of a residence other than in St. Bernard Parish during the period in question is not similarly disqualifying. "A natural person may reside in several places but may not have more than one domicile." La. Civil Code art. 39.
We disagree that the dispositive facts of Landiak can be applied to supply manifest error in the trial judge's factual finding that Ms. Juneau met the qualification for domicile in St. Bernard. See also Judge Belsome's extensive discussion of the distinction between Landiak and the other cases involving challenges of a candidate's domicile qualifications. Landiak, 900 So.2d at 197-200 (Belsome, J, dissenting).

V
In this Part we examine the trial judge's findings of fact, credibility determinations, and his inferences from those facts and determinations. See Canter v. Koehring Co., 283 So.2d 716, 724 (La. 1973); Becker, 03-2493, p. 8, 854 So.2d at 870.
The trial judge acknowledged that he was required upon the evidence offered by the objecting voters to determine whether Ms. Juneau had changed her domicile from St. Tammany Parish to St. Bernard Parish. He observed at the conclusion of the evidence that there could be no doubt that at least by February 2010 Ms. Juneau had established a change of domicile. He further observed in this case "the contested aspect of this case comes down to the period between June [2009] to February [2010] ..." The trial judge reviewed the uncontroverted testimony of numerous witnesses that Ms. Juneau was physically residing on Delacroix Island during that "contested" period; he accepted their testimony as true despite the absence of any documentary evidence corroborating her residing on Delacroix Island, such as receipts for rent or utilities or photographs of parties.
*199 This is a classic example of the function of the trier of fact.
The objecting voters would have us find that the trial judge was clearly wrong even about her residency on the island; they argue that the idea that Ms. Juneau, a lawyer and mother, would turn her back on a comfortable suburban home in Lacombe for lodgings in a trailer is implausible. Yet, again, this is an inference for the fact finder. Of course, as is well-known, many people sacrifice for professional ambition and employment opportunities, or conversely, many forego advancement to be closer to family and friends.[7]
While we may have decided the credibility of Ms. Juneau's witnesses differently from the learned trial judge, or drawn other inferences from their testimony, we are bound on appellate review by his reasonable credibility determinations, findings, and inferences therefrom.
"The laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy. Any doubt as to qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office." (citations omitted), Dixon, supra, 587 So.2d at 680. We conclude that the trial judge properly applied this legal principle. While Ms. Juneau did not simultaneous to her relocation to Delacroix Island undertake to document her intent to change her domicile, the record is clear that she announced her intent to family and friends at the time of relocation. "A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence." La. C.C. art. 44.
Ms. Juneau progressively took steps which documented her intention over the course of the following months. Her intent to change her domicile to St. Bernard Parish progressively became manifest such that by February of 2010 there could be, as the trial judge found, no doubt. As the trial judge considered evidence of the period between June 2009 and February 2010, any doubt about her expressed intention to change her domicile to St. Bernard Parish was dispelled by the consistent course of her actions.
Her intent to change her domicile to St. Bernard Parish was expressed at the time she moved into the RV on Delacroix Island such that she, in the view of the factfinder, was entitled to have any lingering doubt resolved in her favor.

VI
Finally, we note in passing that Ms. Juneau answered the appeal and urged that we consider new arguments on exceptions filed after the filing of the amending and supplemental petition. Because we have resolved the principal issue in her favor, we see no need to visit or revisit those arguments.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court in favor of Jeanne Nunez Juneau and against the objecting voters which dismissed their suit with prejudice. We also affirm the trial court's overruling Ms. Juneau's exceptions.
AFFIRMED.
*200 MURRAY, J., dissents with reasons.
McKAY, J., dissents for the reasons assigned by Judge MURRAY.
MURRAY, J., Dissents and Assigns Reasons.
I would reverse the trial court's decision because, just as in Landiak v. Richmond, 2005-0758 (La.3/3//05), 899 So.2d 535, in the instant case the defendant, Ms. Juneau, failed to overcome the overwhelming documentary and objective evidence that cast doubt upon her testimony that she had, by July 9, 2009, changed her domicile from 61401 St. Charles Drive in St. Tammany Parish to a trailer located at 2725 Delacroix Highway in St. Bernard Parish.
As the Louisiana Supreme Court noted in Landiak, "[D]omicle consists of two elements: residence and intent to remain." XXXX-XXXX at p. 9, 899 So.2d at 542 (citations omitted). Although a person can have several residences, at any given time he can have only one domicile. Id. at p. 8, 899 So.2d at 542. When, as here, a person has not made a formal declaration of his intention regarding domicile in the manner prescribed by the Civil Code,[1] proof of that intention depends upon the circumstances. Id. at p. 9, 899 So.2d at 542. The Supreme Court continued:
Thus, determination of a party's intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be. "The expressed intent of the party may be at variance with the intent as evidenced by conduct." "Each case is unique and the courts attempt to arrive at the true intent, whether express or implied."
* * * * *
The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party's uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. The same might be said when a person specifically declares his intent pursuant to La. Civ.Code art. 42. However, in the absence of a formal declaration, when documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled.

Id., pp. 9-11, 899 So.2d at 543-544 (Citations omitted; emphasis supplied).
Considering all the evidence, both documents and testimony, I agree with the trial court's finding that Ms. Juneau unquestionably established domicile in St. Bernard Parish as of February, 2010. However, as the trial court acknowledged, the real dispute in this case concerns the period of time between June, 2009 and February, 2010. Some of the types of documentary evidence typically considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. Landiak, supra, pp. 10-11, 899 So.2d at 543-544. Obviously, the more of these items that are submitted by the party *201 opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence. Id., p. 11, 899 So.2d at 544. In the instant case, the plaintiffs presented a plethora of documentary evidence indicating that at the relevant time, whether that be July 9, 2009 or October 2, 2009, Ms. Juneau had not yet changed her domicile from St. Tammany Parish.[2] Those documents included:
(1) Voter registrationMs. Juneau was registered at her St. Charles Drive address in St. Tammany until February 11, 2010, when she changed it to the Pakenham address;
(2) Driver's licenseMs. Juneau's license bore the St. Charles Drive address until February 11, 2010, when she changed it to the Pakenham address;
(3)Vehicle registrationMs. Juneau's personal vehicle was registered in St. Tammany until February, 2010;
(4) Homestead exemptionMs. Juneau had her homestead exemption on the St. Charles Drive property removed in November, 2009 and took no exemption for that year;
(5) Notarized documentsIn December, 2009, at the time Ms. Juneau and her husband purchased the property on Pakenham, she signed multiple notarized documents (two powers of attorney, mortgage, act of sale, application for building permit to renovate property) averring that she lived in St. Tammany Parish;
(6) Attorney registration statement Ms. Juneau's registration statement required by the Louisiana State Bar Association showed her residence in St. Tammany until May, 2010.
In addition, the plaintiffs presented evidence that Ms. Juneau's young children attended school in St. Tammany; she was registered as a parishioner at a Catholic Parish in St. Tammany; she kept many of her belongings in St. Tammany with her family; and she did not receive any mail at the Delacroix Highway address. In the face of this evidence, Ms. Juneau nevertheless testified that from June, 2009, through February, 2010 (when her cousin's trailer was moved to the Pakenham property) she both resided at and intended for her domicile to be 2725 Delacroix Highway in St. Bernard.
Despite the absence of a single document or objective piece of evidence showing the Delacroix Highway address, the trial judge found, based upon the uncontroverted testimony of six witnesses (Ms. Juneau's three cousins, her husband, her best friend and her paralegal) that Ms. Juneau did maintain a residence on Delacroix Highway, where she stayed three or four nights per week, between June, 2009 and February, 2010. I find no manifest error in this determination. However, as the trial court also noted, residence is only one prong of the test for domicile, with the second prong being the intent to remain.
Addressing this issue, the trial judge stated on the record: "Ms. Juneau did *202 certain things that evidence her intent to remain." He then listed the factors he considered to be "the more salient ones," namely:
She rejected the homestead exemption. She registered to vote in St. Bernard and did, in fact, vote in an election in St. Bernard. She actually bought a piece of property in St. Bernard on Pakenham.
What the trial court apparently failed to consider, however, is when Ms. Juneau did these things. According to the record, none of these actions was taken before November, 2009. Therefore, they are not evidence that Ms. Juneau possessed the requisite intent on July 9, 2009, which according to the Election Code is the date by which she must have been domiciled in St. Bernard to meet the qualifications for the judicial office she seeks. I believe the trial court erred by relying on these subsequent events to establish Ms. Juneau's intent.
Without the retroactive application of these events, the only evidence to establish intent is Ms. Juneau's own testimony that she intended in June, 2009, to change her domicile to St. Bernard Parish. In my view, the crux of this case is whether her testimony alone is sufficient to rebut the wealth of documentary and objective evidence to the contrary put forth by the plaintiffs. Based upon Landiak, I must conclude that it is not. In that case, the Supreme Court held that the uncontroverted testimony of the candidate and his immediate family was not sufficient to overcome documentary evidence consisting of notarized notice of candidacy forms, voter registration cards, homestead exemptions, motor vehicle registrations, telephone directory entries, candidate's reports, a conveyance record and a police report. XXXX-XXXX at p. 2, 899 So.2d at 538. I note that in the instant case, the objective evidence is even more compelling.
In Landiak, the Court noted that, because Louisiana law recognizes a legal presumption against change of domicile, a party seeking to show a change in domicile must overcome that presumption by presenting "positive and satisfactory proof of establishment of domicile as a matter of fact with the intent of remaining in the new place and abandoning the former domicile." Id. at p. 16, 899 So.2d at 547 (Citations omitted). Moreover, as the Court recognized:
There is no legitimate conflict in testimony where documents or objective evidence so contradict the witness's story, or the story presented by the witness is so internally inconsistent or implausible on its face, that a reasonable fact-finder could not give credence to the witness's testimony. Face with such circumstances, the court of appeal may find manifest error or clear wrongness even in a finding reportedly based upon a credibility determination.
Id. at p. 19-20, 899 So.2d at 549 (Citations omitted).
I see no real distinction between this case and Landiak with regard to proof of intent to change domicile. As the Supreme Court noted: "[D]etermination of a party's intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be." Landiak, 2005-0758, p. 9, 899 So.2d at 543 (Citations omitted; emphasis supplied). In the instant case, Ms. Juneau, a lawyer by profession, obviously knew what positive steps she had to take to establish a change of domicile; she just did not take them soon enough to comply with the election law.
For the reasons cited, I conclude the trial court committed manifest error by finding that Ms. Juneau was domiciled in St. Bernard Parish for at least one year prior to qualifying as a candidate for the *203 appellate judgeship she seeks. Accordingly, I would reverse the trial court's judgment. On this basis I respectfully dissent.
NOTES
[1] The voters are Judith Scaglione and Raymond Doran, Jr. See La. R.S. 18:1401 A.
[2] Also named as a defendant by amending and supplemental petition is the Secretary of State. See La. R.S. 18:1402 B(1); Scaglione v. Juneau, 10-1048 (La.App. 4 Cir. 7/23/10), 41 So.3d 1287, reversed 10-1734 (La.7/27/10), 40 So.3d 127 (per curiam).
[3] Those who have recused are Armstrong, C.J., and Bagneris, Love, Tobias, Gorbaty, and Lombard, JJ.
[4] Ms. Juneau filed her qualifying papers with the secretary of state on July 9, 2010. On that date she certified that "I meet the qualifications of the office for which I am qualifying." See La. R.S. 18:451, which would suggest that she must meet the domicile requirement by July 9, 2009. The challengers, however, argue that the date is October 2, 2009, one year prior to the date of the primary election. But see Steinhardt v. Batt, 00-0328 (La.App. 4 Cir. 2/11/00), 753 So.2d 928, that the proper date for calculating the qualifications would be one year preceding the general election which is scheduled for November 2, 2010 (despite the fact that only two candidates qualified for the office). Also see Acts 2001, No. 172, § 1 (amending La. R.S. 18:451). The parties suggest that whichever of the three dates were selected, there would be no material difference on the facts of this case. We accept their suggestion and do not decide which of these dates is proper as being unnecessary to our decision.
[5] Former La. Civil Code art. 38 provided:

The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment at the option of the persons whose interests are thereby affected.
[6] Former La. Civil Code art. 41 provided: "A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there." Former La. Civil Code art. 42 provided: "This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove." La. Civil Code art. 43 finally provided: "In case this declaration is not made, the proof of this intention shall depend upon circumstances."
[7] See Richard Posner, How Judges Think (Harvard University Press, Cambridge, 2008), p. 60. Moreover, in any event, even if Ms. Juneau's intent to change her domicile was exclusively motivated by her desire to be a candidate for judge in St. Bernard Parish, that would not vitiate her intent. See Cade v. Lombard, 99-0184, p. 4 (La.App. 4 Cir. 1/23/99), 727 So.2d 1221, 1223.
[1] See La. C.C. art. 45.
[2] The trial court apparently applied La. R.S. 18:451, which provides "[i]n the event that the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile as of the date of qualifying, notwithstanding any other provision of law to the contrary." We recognize, however, that La. Const. Art. V, § 24 provides that a candidate for the office of Circuit Judge for the court of appeal must be domiciled in the respective district for at least one (1) year prior to the date of the election. Regardless of whether the applicable date is July 9, 2009 (one year prior to qualifying) or October 2, 2009 (one year prior to the election), I find that Ms. Juneau failed to establish her intent to change her domicile within sufficient time to become a candidate for the judgeship she seeks.