| | | |
|---|---|---|
| **LESLIE A. ELLISON** | * | **NO. 2020-CA-0376** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **JANCARLO JOSE ROMERO** | * | |
| **AND THE HONORABLE** | | **FOURTH CIRCUIT** |
| **ARTHUR A. MORRELL, IN** | * | |
| **HIS OFFICIAL CAPACITY AS** | | **STATE OF LOUISIANA** |
| **CLERK OF CRIMINAL** | * * * * * * * | |
| **COURT FOR THE PARISH OF** | | |
| **ORLEANS** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-06394, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge

* * * * * *

**Judge Daniel L. Dysart**

* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Tiffany G. Chase)

LOMBARD, J., DISSENTS FOR THE REASONS ASSIGNED BY JUDGE CHASE

CHASE, J., DISSENTS

Timothy David Ray
1226 Burdette Street, 2nd Floor
New Orleans, LA 70118
    COUNSEL FOR PLAINTIFF/APPELLANT

Thomas A. Robichaux
THOMAS A. ROBICHAUX, ATTORNEY AT LAW
1317 Milan St
New Orleans, LA 70115
    COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**AUGUST 11, 2020**

*DLD*
*RML*
*SCJ*

On July 31, 2020, Leslie A. Ellison, a New Orleans resident and registered voter, filed an Objection to Candidacy and Petition to Disqualify Candidate ("Petition"), challenging the qualifications of Jancarlo Jose Romero for candidacy for the Orleans Parish School Board, District 4. The Petition names Mr. Romero as a defendant, as well as Arthur Morell, the Clerk of Court for the Criminal Court of Orleans Parish, solely in his capacity as Chief Election Officer for the Parish of Orleans, as is required by La. R.S. 18:1402 A(2).

The Petition asserts two bases upon which Mr. Romero is not qualified to run for the office of School Board Member. First, the Petition alleges that, during the past five years, Mr. Romero did not file federal and state tax returns, or extensions of time for filing these returns, as required by La. R.S. 18:463 A(2)(a)(iv). As such, the Petition alleges, the Notice Mr. Romero filed contains a false certification that his tax returns were filed timely.

Second, the Petition alleges that Mr. Romero does not meet the residency requirements for the position of School Board Member. La. R.S. 17:52 E(1)

1

requires candidates seeking membership to a school board to have "resided in the state for the preceding two years, and [to have] been actually domiciled for the preceding year in the parish, ward, or district from which he seeks election." According to the Petition, Mr. Romero's certification on his Notice that he meets these criteria is false.

In response to the Petition, Mr. Romero filed a Peremptory Exception of No Cause of Action and a Motion for Sanctions against Ms. Ellison and/or her attorney. In the exception, Mr. Romero maintained that the Petition made conclusory allegations without any facts supporting those allegations and that Ms. Ellison's affidavit, attached to the Petition, does not contain personal knowledge as to the information contained therein.

A trial on the merits was held on August 4, 2020, at which time the trial court also heard argument on the exception and Motion for Sanctions. At the conclusion of the proceedings, the trial court orally denied the exception and motion for sanctions, and likewise denied Ms. Ellison's challenge to Mr. Romero's candidacy. A written judgment memorializing the trial court's ruling was rendered on August 5, 2020, dismissing Ms. Ellison's Petition.

Ms. Ellison timely appealed the district court's ruling.[1]  While Mr. Romero did not answer the appeal, in his appellate brief, he has asked this Court to award sanctions for a "frivolous" appeal.

---

[1] Under La. R.S. 18:1409 D, in an action objecting to candidacy, "a party aggrieved by the judgment may appeal by obtaining an order of appeal and giving bond for a sum fixed by the court to secure the payment of costs" within 24 hours after the rendition of the judgment. Here, the Motion for Appeal was filed on August 5, 2020, the same date as the trial court's judgment.

For the reasons that follow, we affirm the district court's judgment; however, we decline to award sanctions.

**DISCUSSION**

In *Eugene v. Davenport*, 14-0953, p. 4 (La. App. 4 Cir. 9/9/14), 150 So.3d 56, 59, citing *Becker v. Dean*, 03-2493, p. 7 (La.9/18/03), 854 So.2d 864, 869, this Court reiterated the well-settled rule that "[i]n an election contest, the person opposing the candidacy bears the burden of proving the candidate is disqualified." Accordingly, we liberally construe "the laws governing the conduct of elections . . . so as to promote rather than defeat candidacy" and "[a]ny doubt as to the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office." *Id.* *See also*, *Scaglione v. Juneau*, 10-1109, p. 12 (La. App. 4 Cir. 8/4/10), 45 So.3d 191, 199; *Williams v. Fahrenholtz,* 08-0961, p. 7 (La. App. 4 Cir. 7/25/08), 990 So.2d 99, 104. This is in furtherance of the principle that "election laws must be interpreted to give the electorate the widest possible choice of candidates." *Landiak v. Richmond*, 05-0758, pp. 6-7 (La. 3/24/05), 899 So.2d 535, 541.

As in other civil appeals, we review this matter under the manifest-error standard. *See Smith v. Charbonnet*, 17-0634, p. 5 (La. App. 4 Cir. 8/2/17), 224 So.3d 1055, 1059 ("[a]ppellate courts review a trial court's findings of fact under the manifest error or clearly wrong standard"); *Eugene v. Davenport*, 14-0953, p. 4 (La. App. 4 Cir. 9/9/14), 150 So.3d 56, 59. As we noted in *Nixon v. Hughes*, 15-1036, p. 2 (La. App. 4 Cir. 9/29/15), 176 So.3d 1135, 1137, "[r]egarding issues of

3

law, the standard of review of an appellate court is simply whether the court's interpretive decision is legally correct[;] [a]ccordingly, if the decision of the trial court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court." (internal citations omitted).

### *Filing of tax returns*

Louisiana Revised Statute 18:461A(1), provides that "[a] person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing notice of his candidacy, which shall be accompanied ... by the qualifying fee and any additional fee imposed." The requirements for a notice of candidacy are set forth in La. R.S. 18:463, which provides, as pertains to this appeal, as follows:

> A. (1)(a) A notice of candidacy shall be in writing and shall state the candidate's name, the office he seeks, the address of his domicile, and the parish, ward, and precinct where he is registered to vote. . . .
>
>          \*\*\*
>
> (2)(a) The notice of candidacy also shall include a certificate, signed by the candidate, certifying all of the following:
>
> > (i) That he has read the notice of his candidacy.
> >
> > (ii) That he meets the qualifications of the office for which he is qualifying.
> >
> >         \*\*\*
> >
> > (iv) Except for a candidate for United States senator or representative in congress, that for each of the previous five tax years, he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or

4

state income tax return or both, or was not required to file either a federal or state income tax return or both.

In this matter, the Notice of Candidacy form, signed by Mr. Romero on July 24, 2020, includes a certification tracking the language of La. R.S. 18:463 A(2)(a)(iv). There is no dispute that Mr. Romero did not file a tax return with the state of Louisiana in 2017. While Ms. Ellison maintains that the trial court "erred in finding that Mr. Romero's taxes were exempt from being filed in 2017 due to his employment abroad for several months of the tax year 2017," she can point to no evidence in the record that Mr. Romero earned any income in the state of Louisiana, thereby triggering the requirement of filing a tax return in this state, or even resided in Louisiana during the year 2017.

Ms. Ellison points to the following evidence at trial in support of her argument that Mr. Romero was required to file a tax return for 2017. First, she notes that the evidence "[shows that] Mr. Romero was working in 2017 both in the United States and abroad as a U.S. citizen." She next notes that Mr. Romero initially testified that, for the year 2017, he lived in Thailand, and later admitted that, in January, 2017, he was living in St. Louis, Missouri. She then points to Mr. Romero's Voter Election History Report, introduced at trial by Ms. Ellison as part of exhibit 4, which reflects that he voted early for an election on November 18, 2017. For the other three elections of 2017, the report indicates that Mr. Romero did not vote. Finally, she argues that, while Mr. Romero testified that he was advised by his tax preparer that he did not have to file a tax return for 2017, "[his] belief was that if a citizen lives abroad for more than a year they are not required to

5

file state taxes was proven to be false by his own admission, as Ms. Ellison's witness, that he did not even live abroad for the full year in question."

The question in this case does not turn on whether Mr. Romero lived abroad for a full year, but whether, under the evidence adduced at the trial of this case, Mr. Romero was required to file a tax return in Louisiana for 2017, such that his certification under La. R.S. 18:463 A(2)(a)(iv) was false. After our review of the record, we find no evidence to support the contention that Mr. Romero falsely certified that he had met the tax-filing requirement of the statute.

A state tax return is required in Louisiana only when income is derived within this state by a resident or nonresident, from whatever source. La. R.S. 47:31 provides, in pertinent part, as follows:

> There shall be levied, collected, and paid for each taxable year a tax upon the net income of residents and nonresidents, estates, trusts and corporations, as hereinafter provided.
>
> > (1) Resident individuals. Every person residing within the state, . . . , shall pay a tax on net income from whatever source derived, except as hereinafter exempted.

Although Mr. Romero lived in Missouri in January, 2017 (where, he testified, he was completing a requirement for his doctoral degree), there is no evidence in the record that he resided in Louisiana in 2017 or earned any income in Louisiana for which a tax return was required. Nor are we convinced that, because Mr. Romero voted early for the November, 2017 election, he was required to file a 2017 tax return. While this may confirm that Mr. Romero was physically present

in Louisiana in November, 2017, it in no way suggests that he earned any income or resided Louisiana at that time.[2]

We, therefore, find no manifest error in the trial court's finding that Mr. Romero satisfied the requirements of La. R.S. 18:463 A(2)(a)(iv) or that he was not required to file a tax return for 2017. Thus, Mr. Romero's certification does not falsely certify that he filed the required tax returns.

### Mr. Romero's domicile

To qualify for election to membership in a parish school board, La. R.S. 17:52 E(1) states as follows:

> Any person who at the time of qualification as a candidate for the school board has attained the age of eighteen, resided in the state for the preceding two years, and has been actually domiciled for the preceding year in the parish, ward, or district from which he seeks election is eligible for membership on the school board. . . .

As the Louisiana Supreme Court indicated in *Landiak*,

> The terms "residence" and "domicile" are legal terms that are not synonymous. The most oft-cited difference between the two concepts is that a person can have several residences, but only one domicile. Domicile is an issue of fact that must be determined on a case-by-case basis.

*Landiak*, p. 8, 899 So.2d at 542. (internal citations omitted). The *Landiak* Court further explained:

> Every person has a domicile of origin that he retains until he acquires another.

\*\*\*

---

[2] We note too that the record contains an application, signed by Mr. Romero on August 12, 2017 to vote by absentee ballot on the basis that he was an "overseas citizen."

> Louisiana case law has traditionally held that domicile consists of two elements, residence and intent to remain.

> \*\*\*

> The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party's uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. The same might be said when a person specifically declares his intent pursuant to La. Civ.Code art. 42. However, in the absence of a formal declaration, when documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. Obviously, the more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence.

*Id.*, pp. 9-11, 899 So.2d at 543-44. (internal citations and footnotes omitted).

"[W]hen a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy." *Id.*, p. 7, 899 So.2d at 541.

Ms. Ellison does not dispute that Mr. Romero meets the requirement that he live in the state of Louisiana for the two years preceding the November 3, 2020 election. She challenges, however, Mr. Romero's certification that he has been

domiciled "in the parish, ward or district from which he seeks election" for the preceding year. Mr. Romero listed his residence on the Notice as 3419 Somerset Dr., New Orleans, Louisiana, 70131, which is located within the district of the school board election. Ms. Ellison contends that this address is not his "domicile" and introduced several documents at trial which allegedly support her contention. Those documents include the following:

- a July 6, 2012 Louisiana voter's registration application listing Mr. Romero's address as 220 S. Lopez St., New Orleans, Louisiana;

- an October 9, 2012 Louisiana voter's registration application listing Mr. Romero's address as 812 Gravier St., New Orleans, Louisiana;

- an October 25, 2014 voter identification affidavit, listing Mr. Romero's Gravier St. address;

- the August 12, 2017 application for absentee voting, listing Mr. Romero's Gravier St. address;

- an August 5, 2018 Louisiana voter's registration form updating Mr. Romero's address to 929 Dublin St., New Orleans, Louisiana;

- an October 14, 2019 voter's registration application form updating Mr. Romero's address to the Somerset address;

- a candidate report of Brendan Csaposs (who was then running for the Council of East Baton Rouge Parish) listing Mr. Romero as making a donation on January 28, 2019, with the Dublin St. address;

- a print-out from the Secretary of State's website reflecting the April 19, 2017 registration of a non-profit corporation, Living School, Inc., with a March 27, 2020 filing of its last report, which lists Mr. Romero as an officer, listing the Dublin St. address;

- the voter election history report showing Mr. Romero's voting history and reflecting that, for two elections within the year preceding Mr. Romero's Notice filing (October 12, 2019 and November 16, 2019, the latter of which Mr. Romero voted early), he voted in a ward outside the district for this election.

Mr. Romero introduced documents at trial to establish that his address at the time he filed his Notice was, indeed, the Somerset address. Those documents include the following:

- a lease dated June 29, 2019 and signed on July 2, 2019, leasing a room at the Somerset address to Mr. Romero and his husband;

- Mr. Romero's tax returns for 2019 listing the Somerset address;

- other tax documents (including W-2 forms, an Employer-Provided Health Insurance Offer and Coverage form and a 2019 a tuition statement from the University of Missouri listing the Somerset address) listing the Somerset address;

- a March 5, 2020 vehicle registration form listing the Somerset address.

Additionally, at trial, Mr. Romero testified that the Somerset address is listed on his driver's license. When questioned about his voting history and his having voted in the two elections in 2019 in a district other than the one for which he seeks office, Mr. Romero testified as follows:

Q. And, can you explain to me why your voter registration was not changed until October of 2019:

A. So, I believe there was an election in October of 2019, and that's when I realized that I hadn't changed my voter registration, and so I did it right away. I think I did it two days later when I'd realized that I hadn't changed my voter registration.

Q. Okay. And so you moved and forgot to change it --

A. -- Correct.

Q. -- and when you realized it, you changed it?

A. -- correct.[3]

Mr. Romero also explained, with respect to his address being listed as Dublin Street for Living School, Inc., that he simply had not updated that

_____

[3] Notably, in January, 2020, Mr. Romero voted in the district of this school board election.

information in two years. He then confirmed that, while he previously lived on Dublin Street, he has lived at the Somerset address since the commencement of his lease, that he has "no other residences, apartments or living spaces," that it was his "intent when [he] moved from Dublin Street to Somerset to make this [his] domicile," and that he has lived for more than a year in the proper district for the school board election.

After hearing the testimony and considering the evidence presented at the trial, the trial court concluded that Ms. Ellison's challenge to Mr. Romero's candidacy had no merit, finding:

> There is a lease that shows the date living in Algiers, which is the area is [sic], which is where the school board race is, and the only indication that maybe he wasn't living there was the vote that happened in October and November, but in October, he applied to change, and I don't believe that's enough to disqualify somebody, so I'm going to deny the motion to disqualify.

Ms. Ellison notes that the lease of the Somerset property only leased a "room" to Mr. Romero,[4] that the lease was a month-to-month lease,[5] and that Mr. Romero testified that, pursuant to the lease, he intended to live at the Somerset address "while [he buys] in Algiers." While she makes no specific argument about these facts, it is clear she is suggesting that the Somerset address is not Mr. Romero's domicile. She likewise notes that, when questioned about whether he "kept the Dublin Street for any purpose" he answered, "I'm not sure,"[6] again implying that Mr. Romero's domicile was not at the Somerset address.

---

[4] Under the terms of the lease, the "Landlord agree[d] to rent to [Mr. Romero] the room [at the Somerset address] for use a residential premises only."

[5] The lease provides that "[t]he term of the Lease is a periodic tenancy commencing at 12:00 noon on July 1, 2019 and continuing on a month-to-month basis until the Landlord or the Tenant terminates the tenancy."

[6] The testimony on this issue was as follows:

> Q.    Did you keep the Dublin Street to any purpose?

Our review of the record on this issue reflects that Mr. Romero clearly testified that he was *only* living at the Somerset address once the lease went into effect. He answered in the affirmative when asked "[w]hen you signed this lease, did you move from Dublin Street to this address." Similarly, when asked if he still rented the Dublin Street address, he responded, "oh, no, not at all." Moreover, Ms. Ellison admitted that she has no "evidence that Mr. Romero -- does not make his domicile at the Somerset Drive address."

While Mr. Romero testified that he intended to purchase a home in Algiers (also the district for this election), this does not signify that he had not changed his domicile from the Dublin address to the Somerset address, both of which were properties Mr. Romero leased. It is clear from the evidence at trial that Mr. Romero was no longer domiciled at the Dublin Street property. For this Court to also conclude that Mr. Romero was not domiciled at the Somerset address would amount to a finding Mr. Romero had *no* domicile, a conclusion we cannot reach. We note that "[d]omicile is an issue of fact that must be determined on a case-by-case basis." *Landiak*, p. 8, 899 So.2d at 542. And, we are guided by the standard of review that a trial judge's conclusion regarding a person's domicile (or change of domicile) is "clearly a factual finding subject to the manifest error standard of review." *Steinhardt v. Batt*, 00-0328, p. 2 (La. App. 4 Cir. 2/11/00), 753 So.2d 928, 930.

Based on the record before us, we do not find that Ms. Ellison "overcame the legal presumption that [Mr. Romero's domicile] has not been changed by

---

A.      I may have --
Q.      For how long --
A.      -- I'm not sure.
Q.      -- a week, a month, a year --
A.      -- in terms of -- . . . .

12

positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." *Russell v. Gold*sby, 00-2595, p. 5 (La. 9/22/00), 780 So.2d 1048, 1051. *See also*, *Becker v. Dean*, 03-2493, p. 10 (La. 9/18/03), 854 So. 2d 864, 871 ("[t]he question of domicile is one of intention as well as fact, and where it appears domicile has been assumed in another location, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed."). We, therefore, find no manifest error in the trial court's judgment denying Ms. Ellison's challenge to Mr. Romero's candidacy.

### *Sanctions*

Mr. Romero takes the position that Ms. Ellison's appeal is frivolous and asks this Court to award sanctions against her "to include the taxing of costs and attorney fees."

Our jurisprudence reflects that damages for a frivolous appeal may be awarded "if the appellant is trying to 'delay the action' or 'if the appealing counsel does not seriously believe the law he or she advocates.'" *Hunter v. Maximum Grp. Behavioral Servs., Inc.*, 10-0930, p. 6 (La. App. 4 Cir. 3/16/11), 61 So.3d 735, 739, quoting *Hester v. Hester*, 97-2009, p. 5 (La. App. 4 Cir. 6/3/98), 715 So.2d 43, 46. The *Hunter* Court also noted that an appellate court may deem an appeal frivolous "if it does not present a 'substantial legal question.'" *Id*. (Citation omitted).

Our jurisprudence also reflects that "[a]ppeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted' due in part to the possible chilling effect on the appellate process." *Johnson v. Johnson*, 08-0060, pp. 5-6 (La. App. 4 Cir. 5/28/08), 986 So.2d 797, 801, quoting *Tillmon v. Thrasher Waterproofing*, 00-0395, p. 8 (La. App. 4 Cir. 3/28/01), 786 So.2d 131,

13

137. Likewise, because the statute allowing the imposition of damages for frivolous appeal is penal in nature, it "must be strictly construed in favor of the appellant." *Hunter*, 10-0930, p. 6, 61 So.3d at 739.

In the instant matter, we do not find that the appeal was filed in bad faith or for purposes of delay. Nor does the record reflect that Ms. Ellison does not seriously believe the law or the position she advocates. Having considered the argument made by Mr. Romero, we do not find that this matter meets the requirements of a frivolous appeal.

**CONCLUSION**

For the reasons set forth above, and finding no manifest error in the trial court's ruling, we affirm the trial court's judgment, dismissing the Objection to Candidacy and Petition to Disqualify Candidate. Because we do not find Ms. Ellison's appeal to be frivolous, however, we decline to award sanctions.

**AFFIRMED**