MOORE, J.
| jDr. Raymond Hicks appeals a judgment declaring him ineligible to run for the Louisiana House of Representatives, District 2. Finding no manifest error in the district court’s judgment, we affirm.

*270
Factual Background

Dr. Hicks filed a notice of candidacy for House District 2 on September 6, 2011, giving his domicile address as 110 Holcomb Drive in Shreveport, which is located in District 2, and certifying that he met the other requirements for office. On September 15, Rudolph Morton filed this challenge, alleging that Dr. Hicks had not been domiciled at Holcomb Drive, or at any other address in District 2, for the year preceding his qualification. La. Const. Art. 3, § 4(A).[1] The matter proceeded to a hearing in the First Judicial District Court on September 19.
At the hearing, Morton established that he was a registered voter and resident of House District 2; even though he believed that Dr. Hicks was currently living on Holcomb Drive, he felt that Dr. Hicks did not meet the one-year domicile requirement. Morton also offered into evidence the obituary for Dr. Hicks’s wife, Georgia, who died on October 3, 2010; a certified copy of Dr. Hicks’s notice of candidacy; a copy of a cash sale deed showing that Dr. and Mrs. Hicks bought a house on Willow Point Drive (not in House District 2) in 2002; and a copy of a cash donation from Mrs. Hicks to their daughter, Shannan Hicks, of the Holcomb Drive house in 2003.
^Angela Tuck, a secretary at plaintiffs counsel’s law firm, testified that she searched the conveyance records of Caddo Parish and could find no proof that Dr. Hicks had ever conveyed the Willow Point house to anybody. Julia McDonald, an employee of the Caddo Parish Assessor’s Office, testified that Dr. Hicks requested a homestead exemption for the Willow Point house in 2002 and maintained it constantly ever since; tax records for the Holcomb Street house showed the assessed owner was Shannan Hicks.
The Caddo Parish Registrar of Voters, Ernie Roberson, testified that in 1997, Dr. Hicks had registered to vote using the Holcomb Street address (District 2) as his residence; however, in 2001 he changed his residence address to the Willow Point address (House District 4), and did not make another change until January 28, 2011, when he again registered at the Holcomb Street address. Notably, on the change of address form, Dr. Hicks wrote “Nov. 2010” in the “Date Moved” field. Mr. Roberson also testified that based on his office’s records, Dr. Hicks had voted in nearly every election since 2002 in the precinct for the Willow Point address.
Finally, Willie Bradford Jr. testified that sometime during the previous year, on a warm day, he saw Dr. Hicks standing by his stalled car on the 1-220 bridge and gave Dr. Hicks a ride to his house on Willow Point Drive.[2] The plaintiff then rested and Dr. Hicks did not move for involuntary dismissal.
|oDr. Hicks’s daughter, Shannan Hicks, testified that her mother donated the Holcomb Street house to her in 2003 and she lived there until September 2010, when she moved to Baton Rouge. She testified that her last day of employment in Shreveport was October 15, 2010, and her first day in Baton Rouge was October 28, 2010; she left Shreveport for career opportunities and decided not to maintain two households.
*271 Shannan Hicks also testified that her mother suffered from sickle cell anemia and went into cardiac arrest on August 25, 2010; when the family learned that she would have to enter a nursing home, her father did not want to live in the large Willow Point house alone, and he decided to move back to the Holcomb Drive house. On August 30, she had her father sign a lease of the Holcomb Drive house for $1,038 a month, and testified that he had paid her rent every month. She maintained that Dr. Hicks had been sleeping at the Holcomb Drive house ever since August 2010, but admitted that his move back occurred gradually over several months. She also admitted that the utility bills remained in her name until mid-2011, but maintained that she paid them with her father’s money.
Dr. Hicks’s adult son, Michael, testified that he and his family had lived at the Willow Point house ever since “a little before our house sold, end of last year”; a deed showed that Michael’s former home sold in November 2010. He explained that before his mother’s final illness, his parents had planned to move back to Holcomb Drive, in part to downsize and in part to accommodate their youngest, autistic son, Jared, who lives with his parents and is still much more comfortable with the Holcomb Drive ^neighborhood. He testified that after his mother went into intensive care and later died, “they never went back to Willow Point,” and the family would not take Jared back there because it would upset him.
Dr. Hicks, a distinguished educator and former president of Grambling State University, testified that in the summer of 2010, when Shannan decided to move to Baton Rouge, the family held a meeting and decided that Dr. and Mrs. Hicks would move back to Holcomb Drive. Mrs. Hicks was taken to the hospital on August 22; on August 28, doctors informed Dr. Hicks that his wife would never be able to return home, as she required nursing care for the rest of her life. He explained:
I called the kids together because I had made my mind up that * * * Georgia and I dated two years in college and were married for 43 years, so. And when I got that news, I knew I couldn’t stay in that house [at Willow Point]. I wanted the kids to understand my position, * * * there’s no way that I could go back to that house if she was not going to come back there and I wanted them to understand that.
He maintained that after that date, he may have spent a night at Willow Point, “but for all practical purposes, we moved to Holcomb.”
Dr. Hicks also testified that he paid rent and utilities by writing checks into a joint account he held with Shannan, and she actually made the payments electronically. Bank records from August through December 2010 showed several deposits into the joint account which, according to Dr. Hicks and Shannan, were transfers to pay the rent and utilities. The bank records also showed withdrawals by Shannan to cover utility, insurance and mortgage payments; however, there were no payments for the precise amount of the rent, $1,038.
|sDr. Hicks admitted that he did not change the address on his driver’s license until May 2011, but stated that this, like changing the name on the utilities, was a low priority for him around the time of his wife’s sickness and death. He also explained that he wrote “Nov 2010” on the voter registration card because he was thinking of when they got the last of Shan-nan’s furniture out of the Holcomb Drive house. In point of fact, he maintained, Holcomb Drive became his permanent address and domicile on August 29, 2010. Finally, when Willie Bradford gave him a *272 ride from 1-220, Dr. Hicks actually told him to drive to “Mike’s house” on Willow Point.
On rebuttal, Morton called Maxine Sar-py, who lives on Holcomb Drive and testified because of a subpoena. She stated that she was close to Dr. Hicks and his family, and looked on Shannan as a niece. Mrs. Sarpy recalled that shortly after Mrs. Hicks passed away (October 4) and Shan-nan had moved to New Orleans, she called to check on Shannan, who shared with her that Dr. Hicks would be moving into the house on Holcomb Drive and her brother Michael would be moving onto Willow Point. Mrs. Sarpy’s impression from this conversation was that the move had not yet taken place, but would take place in the future. She agreed this was consistent with the November 2010 date Dr. Hicks had placed on the change of voter registration card in January 2011. Dr. Hicks did not cross-examine Mrs. Sarpy; her testimony was not impeached by any other evidence.[3]
| ⅜Action of the District Court
In written reasons for judgment, the district court found merit in plaintiffs argument that Dr. Hicks had not changed his domicile from Willow Point to Holcomb Drive. The court cited the property deeds, homestead exemption, voting and voter registration records, utility bills and driver’s license, finding that Morton made a prima facie case that Dr. Hicks did not change his domicile. As to whether Dr. Hicks rebutted this showing, the record “confirms absolutely this Court’s confidence in the credibility of the Defendant’s witnesses and truthfulness of their testimony.” However, the court found:
Weighing the documentary evidence presented by Plaintiff against the doeu-mentary and testimonial evidence offered by Defendant, this Court deems it difficult to find the totality of evidence offered by Defendant to be factually sufficient and conclusive that Defendant had established his domicile on Holcomb on or before September 6, 2010. Although Defendant has put forth his intention to [move] his domicile from Willow Point, regrettably Defendant experienced a serious family tragedy which interrupted and/or prevented him from accomplishing and completing a change of domicile in a timely manner to satisfy the election requirement. Defendant did not timely take certain actions to adequately complete a change of domicile. Executing the lease on August 30, 2010, and beginning to sleep at the Holcomb address during August, 2010, in this instant case simply appears not to [have] been enough.
In accordance with these findings, the court signed a judgment at 11:05 a.m. on September 21, 2011. This timely appeal by Dr. Hicks followed; the case was submitted to this court at 11:50 a.m. on September 27, 2011.

17Applicable Law

The qualifications for legislative candidacy in Louisiana are set forth in La. Const. Art. 8, § 4(A), which provides:
An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.
A candidate sets out his qualifications in the initial filing of notice of candidacy *273 under La. R.S. 18:461. When the qualifications include a length of domicile requirement, the candidate shall meet that qualification notwithstanding any other provision of law to the contrary. La. R.S. 18:451. A candidate’s qualifications are subject to challenge. La. R.S. 18:1401 A.
In Landiak v. Richmond, 2005-0758 (La.3/24/05), 899 So.2d 535, the supreme court explained the general principles employed in deciding a challenge to qualification for candidacy:
Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. See Becker v. Dean, 03-2493, p. 7 (La.9/18/03), 854 So.2d 864, 869; Russell v. Goldsby, 00-2595, p. 4 (La.9/22/00), 780 So.2d 1048, 1051; Dixon v. Hughes, 587 So.2d 679, 680 (La.1991); Messer v. London, 438 So.2d 546 (La.1983). It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy. Becker, 03-2493 at 7, 854 So.2d at 869; Pattan v. Fields, 95-2375 (La.9/28/95), 661 So.2d 1320. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections “so as to promote rather than defeat candidacy.” Becker, 03-2493 at 7, 854 So.2d at 869; Russell, 00-2595 at 4, 780 So.2d at 1051; Dixon, 587 So.2d at 680. Any doubt concerning the qualifications of a candidate should be resolved in favor of | sallowing the candidate to run for public office. Becker, 03-2493 at 7, 854 So.2d at 869; Russell, 00-2595 at 4, 780 So.2d at 1051; Dixon, 587 So.2d at 680.
Although a plaintiff challenging a candidate’s qualifications bears the burden of proving that the candidate fails to meet the requirements, once the party bearing the burden of proof has established a pri-ma facie case, the burden then shifts to the opposing party to present sufficient evidence to overcome the other party’s prima facie case. Landiak, supra.
A person’s domicile is the place of his habitual residence. La. C.C. art. 38. A person may reside in several places but may not have more than one domicile. La. C.C. art. 39.
Of course, domicile may change. According to La. C.C. art. 44:
Domicile is maintained until acquisition of a new domicile. A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence.
La. C.C. art. 45 provides:
Proof of one’s intent to establish or change domicile depends on the circumstances. A sworn declaration of intent recorded in the parishes from which and to which he intends to move may be considered as evidence of intent.
As the court explained in Landiak:
When a party has not declared his intention in the manner prescribed by La. Civ.Code art. [45], proof of a person’s intention regarding domicile “shall depend upon circumstances.” La. Civ. Code art. 43. Thus, determination of a party’s intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be. Davis v. Glen Eagle Ship Management Corp., 97-0878, p. 2 (La.App. 4 Cir. 8/27/97), 700 So.2d 228, 230; Laborde v. Louisiana Insurance Guaranty Association, 95-1122, p. 5 (La.App. 3 Cir. 3/6/96), 670 So.2d 614, *274 617; Sheets v. Sheets, 612 So.2d 842, 844 (La.App. 1 Cir.1992). “The expressed intent of the party may be at variance with the Ipintent as evidenced by conduct.” LaBorde [Laborde], 95-1122 at 5, 670 So.2d at 617, quoting In re Kennedy, 357 So.2d 905, 909 (La.App. 2 Cir.1978). “Each case is unique and the courts attempt to arrive at the true intent, whether express or implied.” Id.
The court further explained what proof is required to show an intent to change domicile:
Every person has a domicile of origin that he retains until he acquires another. Davis, 97-0878 at 2, 700 So.2d 270 [at 230]; LaFleur v. Seaboard Fire & Marine Insurance Co., (La.App. 3 Cir.), writ refused,, 300 So.2d 185 (La.1974). Because the case law recognizes a legal presumption against change of domicile, a party seeking to show that domicile has been changed must overcome that presumption by presenting “positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile.” Becker [v. Dean, 03-2493 (La.9/18/03) ] at 11, 854 So.2d at 871; Russell [v. Goldsby, 00-2595 (La.9/22/00), 780 So.2d 1048] at 5, 780 So.2d at 1051. Of course, because domicile and residence are two different legal concepts the facts could indicate that one has “abandoned the former domicile” in favor of a new domicile even if the person continues to have a place of residence at the former domicile.
The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party’s uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. The same might be said when a person specifically declares his intent pursuant to La. Civ. Code art. 42. However, in the absence of a formal declaration, when documentary or other objective evidence casts doubt on a person’s statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver’s license address, statements in notarial acts, and evidence that most of the person’s property is housed at that location. Obviously, the more of these items presented by |ina party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiffs evidence.
(Footnotes omitted)
An appellate court reviews legal issues de novo but will not upset a trial court’s finding of fact unless that finding is manifestly erroneous or clearly wrong. Brewer v. J.B. Hunt Transport Inc., 2009-1408, p. 9 (La.3/16/10), 35 So.3d 230, 237. The district court’s factual findings regarding domicile are subject to manifest error review. Landiak v. Richmond, supra at 19, 899 So.2d at 548-549; Jones v. Brown, 35,803 (La.App. 2 Cir. 11/16/01), 799 So.2d 1278. In order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis *275 does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Bonin v. Ferrellgas, 2003-3024, p. 6-7 (La.7/2/04), 877 So.2d 89, 94-95; Stobart v. State, 617 So.2d 880, 882 (La.1993). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, supra. Moreover, appeal is from the judgment itself, not the reasons for judgment. La. C.C.P. arts. 1918, 2082, 2083; Wooley v. Lucksinger, 2009-0571 (La.4/1/11), 61 So.3d 507; Howard v. Willis-Knighton Med. Center, 40,634 (La.App. 2 Cir. 3/8/06), 924 So.2d 1245, writs denied, 2006-0850, -1064 (La.6/14/06), 929 So.2d 1268, 1271.
| nDiscussion
Dr. Hicks raises three assignments of error. First, the court erred in failing to consider the totality of the evidence, testimony and circumstances. Second, Dr. Hicks properly established his domicile in District 2 on August 29, 2010. Third, Morton failed to meet his burden of proof for challenging Dr. Hicks’s candidacy. We will consider these arguments together.
After a thorough review of this record and the exhibits, we conclude that the district court was not manifestly erroneous in finding that Dr. Hicks had not changed his domicile to the Holcomb Drive address in District 2 in time to qualify for this election.
This court is a court of review, and in the absence of proof of a legal error that interdicts the fact-finding process, our review of a factual determination such as this one is heavily constrained by the manifest error rule. Our application of that rule is informed in this case by the principle that the laws governing the conduct of elections should be liberally construed so as to promote rather than defeat candidacy. Nevertheless, this court will not find manifest error in a case where the trial court has chosen one permissible view of the evidence over another and where the record provides support for the trial court’s choice.
The trial court carefully weighed the evidence presented in order to determine Dr. Hicks’s domicile in fact. As the court in Landiak, supra, explained, such an exercise is necessary to give meaning to the concept of domicile; otherwise, every person would be considered legally domiciled wherever he says he is domiciled. Very nearly all the documentary evidence |12in this case supports the district court’s conclusion that, despite Dr. Hicks’s physical presence at Holcomb Drive starting in August 2010, he did not establish his domicile there until a later time. Of all the evidence, perhaps most significant is Dr. Hicks’s statement on his voter registration change of address — unaffected by any concern with qualification as a candidate— that he moved to Holcomb Drive in November 2010. That declaration is consistent with the testimony of Ms. Maxine Sarpy. Ms. Sarpy spoke with Shannan Hicks in the fall of 2010 after Georgia Hicks died in October, and Ms. Sarpy recalled that Shannan told her that her father “would be moving into the [Holcomb] house[.]”
Thus, despite Dr. Hicks’s physical presence in the Holcomb house, the evidence shows that he did not intend to make that address his “habitual residence” until sometime in the fall of 2010. This is not to discount the evidence to the contrary, and in particular the written lease executed by Dr. Hicks and his daughter or the payments made into their joint account by Dr. Hicks. Although this evidence tends to show that Dr. Hicks changed his domicile, it does not approach the level of undermin *276 ing the trial court’s factual determination. It is not sufficient to warrant reversal.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether its conclusions were reasonable. If the factual findings are reasonable in light of the record reviewed in its entirety, the reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Brewer v. J.B. Hunt Transport, supra.

11jtConclusion

Because we detect no manifest error in the trial court’s finding of fact that supports its judgment, the judgment disqualifying Dr. Hicks as a candidate for state representative is hereby affirmed at appellant’s cost.
AFFIRMED.
BROWN, C.J., dissents with written reasons.
DREW, J., dissents for the reasons assigned by Chief Judge BROWN.
LOLLEY, J., dissents for the reasons assigned by Chief Judge BROWN.

. Morton also alleged that Dr. Hicks failed to meet the qualifications regarding redistricting, La. Const. Art. 3, § 4(B), but the parties stipulated at trial that this provision did not apply to the case.

. Although the time reference is unclear, this court assumes that the incident occurred in the summer of 2011; the fact that Dr. Hicks was still living on Willow Point in July or August 2010 would not be relevant to the suit.

. The trial transcript mistakenly recites that Mrs. Sarpy was examined by Dr. Hicks’s counsel.