GARRETT, J.
| Richard Matthew Smith appeals a trial court judgment declaring him ineligible to run for mayor of Springhill, Louisiana. For the following reasons, we affirm,
FACTS
On August 22, 2014, Smith filed a notice of candidacy for the office of mayor of the City of Springhill, Louisiana, in Webster Parish. Smith listed a domicile address of 2008 South Arkansas Road in Springhill. On August 29, 2014, Jeffrey Thebeau, a resident of Springhill who was registered to vote there, filed the present suit contesting Smith’s qualifications to run for mayor. Thebeau alleged that Smith has not been a resident of or domiciled in Springhill for at least a year prior to filing to run for office there. Thebeau claimed that Smith was domiciled in and resided at 9730 Hwy. 159 in Shongaloo, Louisiana, and provided detailed allegations in support of his contentions.
The trial court heard the matter on September 4, 2014. Thebeau testified that he was a resident of Springhill and was registered to vote there. He is a plumber and did work at a house on Highway 159 in Shongaloo in 2013. He understood that the house was actually owned by Smith’s mother, Ginger Smith. Thebeau was paid for the work with a check on Ginger Smith’s account. In April and May 2014, Thebeau did more plumbing work on the Shongaloo house and stated that Smith was present during the work. Smith directed the work and told Thebeau that he lived in the house with his mother. He *236 had a room in the house and showed The-beau some of his ^personal belongings he had in his room there. Smith paid The-beau cash for the work done in 2014.
Melanie Smith, the Registrar of Voters for Webster Parish, testified at the hearing. She stated that the voter registration records show that Smith first registered to vote in 2003, and listed his address as the residence in Shongaloo. On August 22, 2014, Smith submitted a change of address claiming he resided at the house in Spring-hill.
Edward Luckette, manager of the Boucher and Slack Home Center in Springhill, testified that on February 13, 2014, Smith submitted a credit application to the business listing his residence and mailing address as the house in Shongaloo. On August 22, 2014, Smith changed his address on the account to a post office box in Springhill.
Myrna Leggett, office manager at Pulley Construction, testified that Smith submitted a job application and resume to the business on February 20, 2014. These documents listed his address as the residence in Shongaloo.
Curtis Calton, a plumber who works with Thebeau Plumbing, testified that he accompanied Thebeau as they worked on the residence in Shongaloo on two separate occasions. He stated that Smith was present while they performed plumbing work in 2013 and 2014. In 2013, Smith said he lived at the residence. According to Calton, in 2014, Smith did not indicate that this had changed. Smith never indicated that he lived anywhere other than the Shongaloo residence.
|3In connection with all of the above testimony, the plaintiff also introduced numerous exhibits which included notarized documents executed by Smith in December 2011, attesting that his domicile was in Shongaloo; another document filed with the Louisiana Secretary of State as recently as November 2013, showing the Shonga-loo address; Smith’s signed 2003 voter registration application listing the Shonga-loo address; the 2014 credit application with Boucher and Slack reflecting the Shongaloo address; Smith’s resume reflecting the Shongaloo address; and the February 2014 employment application containing the Shongaloo address.
At that point, Thebeau rested his case. Smith moved for a directed verdict, arguing that Thebeau did not establish the geographic boundaries for voting for may- or of Springhill. Smith argued that, without establishing that Smith could not have voted for mayor of Springhill while he resided in Shongaloo, the plaintiff had failed to prove his case. Thebeau asked the court to take judicial notice that “Shongaloo is clearly not Springhill.” The trial court stated that the registrar of voters testified that, prior to August 22, 2014, Smith was never registered to vote in Springhill. The court concluded that, because Smith was not registered to vote in Springhill, he could not vote in the race for mayor of Springhill. The trial court denied the motion for directed verdict and Smith presented his defense.
Ginger Smith, the mother of Smith, testified on his behalf. She stated that she had lived at the residence in Shongaloo all of her life. She was married to Smith’s father, but they divorced when Smith was four or five years old. Smith went to live with his father and his grandmother at the | residence in Springhill, although Ms. Smith had domiciliary custody. The house in Springhill, at issue in this case, is owned by Smith’s grandmother, Jean Smith. Ginger stated that Smith does not own a home. He has a room at the Springhill residence and spends a lot of time there. When he is not at the house in Springhill, *237 he stays with her at her residence in Shon-galoo. Ms. Smith testified that Smith helps her farm the acreage associated with her Shongaloo residence. Smith also has a construction company. The business is incorporated and records with the Louisiana Secretary of State list the Shongaloo address as the official address of the business. Ms. Smith stated that she helps her son with the business by lining up his jobs.
Jean Smith, Smith’s grandmother, testified that Smith has stayed at her house in Springhill for a considerable amount of time since he was a child. When he is not staying at her house, he stays with his mother in Shongaloo. Smith’s grandmother testified that Smith spends more time at her house than he does with his mother.
Smith testified that he lives at his grandmother’s house in Springhill and has lived there most of his life. He considers his grandmother’s house his home. He acknowledged that previously, his voter registration and driver’s license listed his address as his mother’s house in Shonga-loo. He stated that he changed these addresses on August 22, 2014, in anticipation of running for mayor of Springhill. When asked about those changes coinciding with his attempt to qualify to run for mayor, Smith said, “I’ve been a very busy man.” Smith stated that he formed a corporation for his construction business using his mother’s address in Shongaloo as the | ¿address for the corporation. He had listed his mother’s house in Shongaloo as his address on some bank accounts, but had recently acquired a post office box in Springhill for those bank accounts.
At the end of the hearing, the trial court issued an oral ruling in open court. It is clear from the record that the trial court had familiarized itself with all of the applicable statutes and jurisprudence regarding election contests and issues pertaining to domicile prior to the hearing. It is also clear that the trial court paid close attention to the testimony and asked its own questions for clarification. The trial court ruled that Smith did not meet the qualifications to run for mayor of Springhill. The court recognized that a person may have more than one residence and observed that Smith split his time almost evenly between his mother’s house in Shongaloo and his grandmother’s house in Springhill. The court observed that the essential question was Smith’s domicile for the year preceding his filing to run for office. The trial court found that Smith was not domiciled in Springhill stating:
I don’t believe that you were domiciled in Springhill for twelve months preceding this election. I believe that your primary residence, as reflected in your banking documents; as reflected in your secretary-of-state documents; as reflected in your Boucher and Slack credit application; as reflected by the fact that your driver’s license had Highway 159 on it; your voter registration had Highway 159 on it, all up until August the 22nd.... I think you made all those changes for the purposes of running and I don’t think you were domiciled at the Springhill address for the one year immediately preceding, so, therefore, it’s the ruling of this court that you are disqualified as a candidate for the Springhill mayoral election.
Smith appealed the trial court ruling.
|.LEGAL PRINCIPLES
The qualifications for mayor are set forth in La. R.S. 38:384 which provides:
The mayor shall be an elector of the municipality who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.
*238 A candidate sets out his qualifications in the initial filing of notice of candidacy under La. R.S. 18:461. When the qualifications include a length of domicile requirement, the candidate shall meet that qualification notwithstanding any other provision of law to the contrary. La. R.S. 18:451; Morton v. Hicks, 46,991 (La. App.2d Cir.9/28/11), 74 So.3d 268, writ denied, 2011-2140 (La.9/30/11), 71 So.3d 297. A qualified elector may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote. La. R.S. 18:1401(A). An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on specific grounds which may include that the defendant does not meet the qualifications for the office he seeks in the primary election. See La. R.S. 18:492.
Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. Landiak v. Richmond, 2005-0758 (La.3/24/05), 899 So.2d 535; Russell v. Goldsby, 2000-2595 (La.9/22/00), 780 So.2d 1048. It follows that, when a particular domicile is required for candidacy, the burden of showing lack of 17domicile rests on the party objecting to the candidacy. Landiak v. Richmond, supra. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections as to promote rather than defeat candidacy. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. Landiak v. Richmond, supra.
La. R.S. 18:451, relative to qualifications of candidates, specifically requires that when the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile. As is evident from the use of the word “shall” in the above statute, the requirement is mandatory. Landiak v. Richmond, supra.
Although a plaintiff challenging a candidate’s qualifications bears the burden of proving that the candidate fails to meet the requirements, once the party bearing the burden of proof has established a pri-ma facie case, the burden shifts to the opposing party to present sufficient evidence to overcome the other party’s prima facie case. Morton v. Hicks, supra.
The terms “residence” and “domicile” are legal terms that are not synonymous. A person can have several residences, but only one domicile. Domicile is an issue of fact that must be determined on a case-by-'case basis. Landiak v. Richmond, supra.
Louisiana case law has traditionally held that domicile consists of two elements, residence and intent to remain. Determination of a party’s intent to change his or her domicile must be based on the actual state of the facts, | «not simply on what the person believes them to be. Landiak v. Richmond, supra.
A person’s domicile is the place of his habitual residence. La. C.C. art. 38. A person may reside in several places but may not have more than one domicile. La. C.C. art. 39. Of course, domicile may change. According to La. C.C. art. 44, domicile is maintained until acquisition of a new domicile. A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence. La. C.C. art. 45 provides that proof of one’s intent to establish or change domicile depends on the circumstances. See Morton v. Hicks, supra.
*239 The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party’s uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. The same might be said when a person specifically declares his intent pursuant to La. C.C. art. 45. However, in the absence of a formal declaration, when documentary or other objective evidence casts doubt on a person’s statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. Landiak v. Richmond, supra. Absent declaration to change domicile, proof of this intention depends on the Iflrircumstances; there is a presumption against change of domicile. Russell v. Goldsby, supra. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver’s license address, statements in notarial acts, and evidence that most of the person’s property is housed at that location. Obviously, the more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiffs evidence. Landiak v. Richmond, supra.
The district court’s factual findings regarding domicile are subject to manifest error review. In order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Morton v. Hicks, supra.
DISCUSSION
In his appeal, Smith contends that The-beau never proved that Smith was not qualified to vote in the election for mayor of Springhill prior to the time he changed his address. Smith argues that the registrar of voters for Webster Parish did not state that Smith would be ineligible to vote in that election if he maintained his voter registration in Shongaloo. Smith also | ^contends that the trial court erred in failing to find that he was domiciled in Springhill. These arguments are without merit.
In connection -with Smith’s motion for a directed verdict, the trial court considered the argument that Thébeau failed to prove the geographic boundaries for the Springhill mayoral election. The trial court noted that prior to his change of address to Springhill, which occurred on the date of qualifying for office, Smith listed his address as his mother’s house in Shongaloo for all important documents. Smith’s original voter registration application made in 2003 listed the Shongaloo address. As argued by Thebeau’s counsel below, “Shongaloo is clearly not Spring-hill.” The lower court recognized that Shongaloo and Springhill are separate municipalities. The evidence adduced by the plaintiff proved that the defendant was not eligible to vote in Springhill. Smith presented no evidence that he was a valid elector in Springhill while he was domiciled in Shongaloo. We find no error in the trial court decision rejecting Smith’s argument on this issue.
*240 Further, the trial court did not err in finding that Smith was not domiciled in and did not reside in Springhill for the year preceding seeking mayoral office. As explained above, the plaintiff introduced numerous documents and exhibits which clearly showed that Smith’s domicile had been in Shongaloo for a significant period of time prior to August 22, 2014. There was ample objective evidence adduced in this case to support the trial court’s decision to reject the self-serving and unsupported testimony presented by the defendant and his relatives that the defendant’s domicile was allegedly in Springhill. As stated by the trial court, Smith’s driver’s Inlicense, voter registration, bank accounts, and corporate address were all in Shongaloo for many years preceding his notice of candidacy. The facts of this case are distinguishable from those in Russell v. Goldsby, swpra, urged by Smith. In Russell, the defendant, who had been may- or of Amite since 1984, was met with a challenge to his candidacy in 2000, on grounds he now lived outside the town limits. Evidence in Russell showed that the defendant had a residence in Amite where he stayed some of the time. He had a homestead exemption on the property and had always claimed that residence as his domicile. Although he had another residence outside the town limits, where he stayed frequently, he never indicated an intent to change his domicile and he still resided at the house in the town limits a portion of the time.
In the present case, the evidence shows that for the year preceding filing to run for mayor of Springhill, Smith was domiciled in Shongaloo. The statute requires both domicile and residence in the municipality for the preceding year before seeking the office of mayor. The trial court was not manifestly erroneous in finding that Smith was ineligible to be a candidate for mayor.[1] The evidence adduced at the hearing, coupled with the documentary evidence, clearly supports the ruling made below.
| ^CONCLUSION
For the reasons stated above, we affirm the ruling of the trial court disqualifying Richard Matthew Smith as a candidate for the office of mayor of Springhill, Louisiana. Costs in this court are assessed to Richard Matthew Smith.
AFFIRMED.

. We note that the trial court mentioned in his ruling that no testimony was adduced concerning where the defendant attended school. In our review of the exhibits, we note that the 2014 job application submitted by the defendant shows that he graduated from Shongaloo High School in May 2002. We also note that on his resume he lists himself as an owner/operator of "S & S Farms” in Shongaloo and describes extensive remodeling activities undertaken at the farm house. Again, the documentary evidence casts doubt on the defendant’s self-serving testimony and provides further support for affirming the decision made by the trial court.