Judgment rendered at _____ p.m.
on August 27, 2019.

No. 53,265-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHARLES LEE GRAY,                              Plaintiff-Appellees
ARTHUR LEONARD SEALY, III,
AND PAUL EDWARD PEEK, SR.

versus

JASON TREVOR BROWN                          Defendant-Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 160192

Honorable Ford E. Stinson, Jr., Judge *(Pro Tempore)*

* * * * *

HENRY N. BROWN, JR.                          Counsel for Appellant
DANIEL ROBERT KEELE

H. LYNWOOD LAWRENCE, JR.                   Counsel for Appellees

* * * * *

Before WILLIAMS, MOORE, STONE,
McCALLUM, and THOMPSON, JJ.

**McCALLUM, J.**

The citizens of this state have determined, as a minimum

qualification, that a candidate who seeks to become an elected public servant

must first be domiciled among the public he wishes to serve. This

domiciliary requirement is where the crux of the case before us resides.

Jason Trevor Brown appeals a judgment of the trial court declaring him

ineligible to run for the office of Bossier Parish Police Juror District 9. For

the following reasons, we affirm.

## FACTS

On August 8, 2019, Jason Trever Brown ("Mr. Brown") filed a notice

of candidacy for the office of Bossier Parish Police Juror District 9

(hereinafter "District 9"). Mr. Brown listed his domicile address as 2606

Village Lane, Bossier City, Louisiana. On August 15, 2019, Charles Lee

Gray, Arthur Leonard Sealy, III, and Paul Edward Peek, Sr., filed a petition

to disqualify Mr. Brown as a candidate on the grounds that he had not been

domiciled in District 9 during the year preceding his qualification.[1] Mr.

Brown filed an answer to the petition on August 19, 2019. The matter

proceeded to a hearing on August 19, 2019, before Judge Ford E. Stinson, Jr.

Seven witnesses testified and "extensive" documentary evidence was

introduced at the hearing. After the petitioners presented their case, Mr.

Brown moved for a directed verdict in his favor.[2] After finding that the

petitioners had made a *prima facie* showing that Mr. Brown was not

---

[1] At the hearing on the petition, it was stipulated that both Gray and Sealy were domiciled, resided and voted in District 9. Peek was not present at the hearing. Gray is apparently also a candidate for the subject seat.

[2] A directed verdict is a product of the Code of Criminal Procedure. The proper terminology is a motion for an involuntary dismissal under La. C.C.P. art. 1672.

domiciled at the Village Lane address, the trial court denied the motion. The trial court ruled that the burden of proof shifted to Mr. Brown to show that he was domiciled in District 9. On August 20, 2019, the trial court declared Mr. Brown ineligible to be a candidate for the District 9 office and this appeal ensued.

The evidence and testimony presented at the hearing was largely uncontested. The trial court, in a cogent written opinion, chronicled the evidence and testimony in its reasons for judgment:[3]

> [T]he Court considers that Defendant is steadfast in his assertion that he has considered the Village Lane address to have always been his domicile since he first moved there in 1980. He attended elementary school, junior high school, and high school in the appropriate zones encompassing the Village Lane address. He is registered to vote in the precinct appropriate for the Village Lane address and has voted there through the years. His driver's license reflects 2606 Village Lane as his address, and, thus, his vehicle registration for several vehicles likewise reflects the Village Lane address. Defendant's marriage license from February of 2016 states that he was a resident of Bossier City (although it does not give a specific address). He occasionally receives mail at the Village Lane address and apparently has some belongings there, as well. Defendant testified that he was elected to a local parish Republican Committee using the Village Lane address and qualified to run for the Louisiana Second Circuit Court of Appeal in March of 2019 using the same address. There is no indication that anyone challenged his domicile in either election.
>
> . . . . . In January of 2002, Defendant and Scott Robert Moody purchased property in Caddo Parish at 858 Prospect Street in Shreveport, Louisiana. The Deed reflects that Defendant and Mr. Moody were domiciled in Caddo Parish and their mailing address was 858 Prospect Street. In August of 2008, Defendant purchased property at 975 Texas Avenue, Shreveport, Caddo Parish, Louisiana, with his mailing address listed at 858 Prospect Street. In February of 2010, Defendant, listed as resident and domiciliary of Caddo Parish, purchased property located at 1003 Texas Avenue, Shreveport, Caddo Parish, Louisiana. In March of 2010, Defendant purchased Mr. Moody's interest in the 858 Prospect Street property, and the

---

[3] We delete any references to exhibit numbers in the quoted reasons for judgment.

2

deed reflects that Defendant was domiciled in Caddo Parish and his mailing address was 858 Prospect Street. In August of 2011, Mr. Brown was a plaintiff in a lawsuit for damages where he was described as a domiciliary of Shreveport, Caddo Parish, Louisiana. In May of 2012, Mr. Brown was again a plaintiff in a suit for damages where his petition identified him as a resident of Shreveport, Caddo Parish, Louisiana.

In three separate Candidate's Reports (including his own in 2019), he is listed as having made contributions with a listed address of 858 Prospect Street. The utilities at 858 Prospect Street, which are listed in his name, are all admittedly paid by Defendant even though he continues to allow another person to live there rent-free and with no written lease. Defendant admitted that he and his wife have resided at the 858 Prospect Street address as recently as late summer or early fall of 2018. Defendant claimed the 858 Prospect Street property for homestead exemption purposes as recently as 2016. Mr. Brown has served as an assistant district attorney in Calcasieu Parish since approximately 2016 and spends three to five days a week in South Louisiana. During this time, he stays at various hotels in the Lake Charles area. Defendant's wife, Melissa Albritton, testified that it was earlier in the year of 2019 that she considered the Village Lane address to be her home. Defendant testified that his wife moved to the 2606 Village Lane address in March or April of 2019. Defendant's wife resided at his property at 975 Texas Avenue in Shreveport, Caddo Parish, Louisiana, prior to April of 2019, and Defendant often stayed there with her when he was in town. In 2017 and 2018, Defendant and his wife filed joint federal and state income tax returns listing 858 Prospect Street, Shreveport, Louisiana, as their home address. Numerous banking records introduced reflected the 858 Prospect Street address as recently as August of 2019. Defendant's wife served on a Caddo Parish jury in 2018.

The evidence shows that Defendant owns no immovable property in Bossier Parish. Defendant's father owns the home at 2606 Village Lane, Bossier City, the utilities are in his name, and he pays all of the utility bills. There is no written lease between Defendant and his father and Defendant pays no rent. Bossier City utility records show little or no water usage for most of 2018 and 2019 at the Village Lane address. Defendant and his wife have rarely stayed overnight at the Village Lane address. Witness Donna Boltinghouse has lived next door at 2604 Village Lane since May of 2013. She testified that she had never seen Defendant before the court hearing on August 19, 2019.

We additionally note that Mr. Brown testified that he continuously lived at the Village Lane address until he left for college in 1988. He further testified that although he left the country for a period of time thereafter, he returned to the Village Lane address where he lived for about three years until 2003, when he lost his job. Mr. Brown contended that his father moved out of the Village Lane location in 2016. Mr. Brown married in 2016. The marriage certificate listed his residence as Bossier City.

Mr. Brown testified that his paycheck from the Calcasieu District Attorney's office was mailed to the 2606 Village Lane address until his employer began using a direct-deposit method. Mr. Brown admitted that he changed his bar association address to 2606 Village Lane in January of 2019, but asserted that he had always used that address as a secondary address.

Mr. Brown testified that he understood that he could have multiple residences and used other addresses to receive mail. He claimed to also receive mail at 975 Texas Avenue, 1000 Benton Road and 2606 Village Lane. Mr. Brown testified that his driver's license had consistently listed the Village Lane address and no other. His vehicles are registered to the Village Lane address.

One of Mr. Brown's Prospect Street neighbors, Derek Simmons, testified on behalf of Mr. Brown. He recounted how he helped Mr. Brown move items to the Village Lane townhouse and repair a floor there more than a year earlier. Mr. Simmons recalled that Mr. Brown had clothing and personal items at the Village Lane townhouse and would utilize it when he came into town. Simmons remembered when Mr. Brown's father moved out

4

of the townhouse at the end of 2016 or early 2017 because he had assisted in the move.

At the conclusion of the testimony, the trial court took the matter under advisement before rendering a written judgment on August 20, 2019. Addressing the denial of Mr. Brown's motion for a directed verdict,[4] the trial court observed that while it believed his domicile was originally at the Village Lane address, the evidence clearly contradicted his claim that he never changed his domicile. The trial court specifically found that his assertion that the Village Lane address has always been his domicile was not credible in view of the overwhelming evidence to the contrary. Thus, the evidence presented at trial was sufficient to establish that Mr. Brown "has not been actually domiciled in Bossier Parish Police Jury District 9 for the year preceding his qualifying to run."

**LAW**

Regarding the qualifications for its police jurors, Bossier Parish Ordinance Section 2-31 provides:

> (a) The parish police jury shall consist of 12 members, each of whom shall be elected under applicable state law from one of the 12 parish election districts, by the voters of such districts, which districts shall be designated as 1-12, inclusive.
>
> (b) Persons desiring to offer themselves as candidates for membership on the police jury shall, at the time of qualification, possess such qualifications as generally required under applicable state law for police jurors, and additionally, they shall have been actually domiciled for the preceding year in the parish election district from which they seek to be elected.

Members of the police juries shall possess the same qualifications at the time of their election as members of the House of Representatives. La.

_____

[4] See footnote 2, *supra*.

R.S. 33:1225. Louisiana Constitution Article 3 § 4(A) provides, "An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature." La. Const. art. 3, § 4(A); *Messer v. London*, 438 So. 2d 546 (La. 1983); *Jones v. Brown*, 35,803 (La. App. 2 Cir. 11/16/01), 799 So. 2d 1278.

A candidate sets out his qualifications in the initial filing of notice of candidacy under La. R.S. 18:461. When the qualifications include a length of domicile requirement, the candidate shall meet that qualification notwithstanding any other provision of law to the contrary. *Kelley v. Desmarteau*, 50,552 (La. App. 2 Cir. 9/28/15), 184 So. 3d 55; *Morton v. Hicks,* 46,991 (La. App. 2 Cir. 9/28/11), 74 So. 3d 268, *writ denied,* 2011-2140 (La. 9/30/11), 71 So. 3d 297; *Thebeau v. Smith,* 49,665 (La. App. 2 Cir. 9/8/14), 148 So. 3d 233.

La. R.S. 18:451, relative to qualifications of candidates, specifically requires that when the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile. As is evident from the use of the word "shall" in the statute, the requirement is mandatory. La. R.S. 1:3; *Landiak v. Richmond,* 2005-0758 (La. 3/24/05), 899 So. 2d 535; *Thebeau v. Smith*, *supra*.

The terms "residence" and "domicile" are legal terms that are not synonymous. *Landiak v. Richmond, supra*; *Kelley v. Desmarteau, supra.* The domicile of a natural person is the place of his habitual residence. La. C.C. art. 38. A natural person may reside in several places but may not have more than one domicile. In the absence of habitual residence, any place of

6

residence may be considered one's domicile at the option of the person whose interests are affected. La. C.C. art. 39.

Every person has a domicile of origin that he retains until he acquires another. La. C.C. art. 44; *Landiak v. Richmond, supra.* A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence. La. C.C. art. 44. The determination of a party's intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be. *Landiak v. Richmond, supra; Thebeau v. Smith, supra; Kelley v. Desmarteau, supra.* There is a presumption against change of domicile. *Landiak v. Richmond, supra; Messer v. London, supra.* The party seeking to show that domicile has been changed must overcome that presumption by presenting positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. *Landiak v. Richmond, supra.*

A qualified elector may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote. La. R.S. 18:1401(A). The qualified elector's objection shall be based on a specific ground as given in La. R.S. 18:492. That the defendant does not meet the qualifications for the office he seeks in the primary election is one such enumerated objection. See La. R.S. 18:492.

Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. *Landiak v. Richmond, supra; Russell v. Goldsby,* 2000-2595 (La. 9/22/00), 780 So. 2d

7

1048; *Thebeau v. Smith, supra.* It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy who must establish a *prima facie* case that the candidate does not meet the domicile requirement. The burden then shifts to the opposing party to present sufficient evidence to overcome the *prima facie* case. *Landiak v. Richmond, supra*; *Thebeau v. Smith, supra.* A court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections so as to promote rather than defeat candidacy. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. *Landiak v. Richmond, supra; Thebeau v. Smith, supra; Kelley v. Desmarteau*, *supra.* Domicile is an issue of fact that must be determined on a case-by-case basis. *Id*.

Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party's uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary.[5] In the absence of such a formal declaration, when documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. *Landiak v. Richmond, supra.* Some of

---

[5] A sworn declaration of intent recorded in the parish from which and to which he intends to move may be considered evidence of intent. La. C.C. art. 45.

the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. *Thebeau v. Smith, supra; Kelley v. Desmarteau, supra.* Such a list is not exhaustive or dispositive alone on the issue of domicile. A trial court may require testimony and other evidence, on a case-by-case basis, as necessary, for a complete and proper evidentiary record prior to making its decision.

The district court's factual findings regarding domicile are subject to manifest error review. In order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Thebeau v. Smith, supra; Kelley v. Desmarteau*, *supra*.

## DISCUSSION

This Court recognizes that the domiciliary requirements, prerequisite to qualifying for elected office, should be construed liberally so as to resolve doubts in favor of allowing a candidate to qualify for that office. However, too feeble an application of the domiciliary requirements renders them impotent and effete. Indeed, if police jurors were not required to be domiciled in the district they represent then the lines dividing particular parishes into different police jury districts would be rendered meaningless.

9

Dividing parishes into separate geographical police jury districts and requiring the one-year domicile serve many legitimate political and governmental purposes. Adequate representation from all portions of the parish is thereby ensured. More populous and prosperous areas are prevented from dominating parish government at the expense of other locales. Local interests are afforded representation that is more accountable to them. Finally, accessibility of elected officials by the people they represent is enhanced.

In the case before us, the trial court determined that the petitioners satisfactorily established a *prima facie* case that Mr. Brown had changed his domicile from 2606 Village Lane in Bossier Parish to one in Caddo Parish. The trial court further found that Mr. Brown failed to present sufficient evidence to overcome that *prima facie* case. Affording the great deference allowed to the trial court, we find no manifest error in this finding.

Mr. Brown was required to show that he was domiciled in District 9 one year prior to his date of qualification on August 8, 2019. The evidence presented by the petitioners included several sworn and notarized public records which set forth compelling and persuasive evidence of Mr. Brown's intent to change his domicile to 858 Prospect Street in Caddo Parish. Additionally, the petitioners presented evidence of the 2017 and 2018 joint income tax returns and Mr. Brown's mortgage interest reports through 2019, which all reflected the Prospect Street address in Caddo Parish.

Evidence relating to Mr. Brown's actual residence at 2606 Village Lane showed minimal water usage during both 2018 and 2019. To the contrary, documentation of water usage at the Prospect Street home in August, September and October of 2018 was typical. Albritton testified that

Remedies did not move into the Prospect Street home until November of 2018.[6] A neighbor had never seen Mr. Brown at 2606 Village Lane and heard very little activity in the townhouse until very recently in 2019. Albritton confirmed that she had not moved into 2606 Village Lane until the spring of 2019 after she had transitioned from staying at the Prospect Street residence to 975 Texas Avenue prior to that time. Mr. Brown did not dispute that he would stay with Albritton when he came home on weekends. Albritton also testified that she and Mr. Brown did not spend the night in the Village Lane townhouse in 2018.

We discern no manifest error in the trial court's determination that Mr. Brown failed to present sufficient countervailing evidence to show that he was continually domiciled or reestablished his domicile at 2606 Village Lane in the year preceding August 8, 2019. Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Mr. Brown.

**AFFIRMED.**

---

[6] Mr. Brown and his wife testified that Andrea Remedies moved into the Prospect Street address in the fall of 2018 when Ms. Remedies and her husband separated. Ms. Remedies was not available to testify because she was on a cruise at the time of the hearing.