Judgment rendered August 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,898-CA

## COURT OF APPEAL
## SECOND CIRCUIT
## STATE OF LOUISIANA

* * * * *

ANGELICA MILLICAN                           Plaintiff-Appellee

Versus

LASHONDRA ELAINE RUSSELL              Defendant-Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Bienville, Louisiana
Trial Court No. 46106

Honorable Charles Glenn Fallin, Judge

* * * * *

LAW OFFICE OF IVAN J. DAIGS              Counsel for Appellant
By: Ivan Jerome Daigs

LAW OFFICE OF CHRIS L. BOWMAN        Counsel for Appellee
By: Chris Lane Bowman
    Colby L. Bowman

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

HUNTER, J., concurs with written reasons.

**COX, J.**

LaShondra Elaine Russell appeals the judgment of the trial court disqualifying her as a candidate for the office of mayor of the City of Arcadia, Louisiana. For the following reasons, we affirm.

**FACTS**

Appellant LaShondra Elaine Russell ("Russell") qualified to run for the office of mayor of Arcadia in the primary election to be held on November 8, 2022.[1] On July 26, 2022, Angelica Millican ("Millican") filed a petition in district court objecting to the candidacy of Russell on the grounds that Russell had not been a resident of or domiciled in the city limits of Arcadia for at least a year prior to qualifying to run for office there. Russell answered the petition on July 29, 2022. Russell listed her address as 1120 Jonesboro Road, Arcadia, Louisiana, where she claimed she had lived since January 1, 2021. It is this address which forms the basis for the dispute at hand. The matter was tried on August 1, 2022.[2] Five witnesses testified and eight exhibits were introduced into evidence.

In support of her claim, Millican called Russell to testify at trial. Russell stated that after living in various places upon her graduation from college in 2011, she returned to Arcadia in 2019 and stayed with her grandmother, Dottie Jefferson, at 2910 Ivy Street, inside the City limits of Arcadia. Jefferson died in February of 2022.[3] Russell was unable to provide

---

[1] Qualifying in Louisiana for the November 8, 2022, election was held July 20-22, 2022.

[2] Although Russell moved to back to Arcadia in 2019, she makes no claim that she was a resident of or domiciled in Arcadia at any other address prior to that time.

[3] Russell testified that she "went back and forth" between her grandmother's house and 1120 Jonesboro Road where all of her clothes remained and she intended and

exact dates for the time she lived outside of Arcadia and failed to bring her driver's license to court, although she testified that the address on her license was 1120 Jonesboro Road. Russell also admitted that on April 29, 2022, she changed her voter registration address to 1120 Jonesboro Road. Russell identified P-1 and P-2 as her voter registration records from 2002 and April 29, 2022. Russell explained that the address on her previous voter registration was 494 Hidden Acre Road, her parents' address located outside of the city limits of Arcadia. Russell could not remember the last time she lived at her parents' address but conceded that she had never registered to vote in any other place until 2022. Russell testified that she got an Arcadia P.O. Box on February 6, 2019, when she moved back to Arcadia with the intent to return there. Russell obtained her P.O. Box to receive "other stuff" in it, but still kept her mailing address at her mother's house. Russell identified D-2 as her "P.O. box papers." Russell conceded that her P.O. Box had "lapsed" in July of 2021 but insisted that it otherwise remained open until the time of trial.

Russell testified that she "switched" her water service into her name at 1120 Jonesboro Road on December 8, 2021, and identified P-3 (introduced into evidence without objection) as the documents relating to that change in service. Russell also conceded that she had the electricity service placed in her name at the Jonesboro Road address on December 2, 2021 (P-4).

O'Landis Millican ("Mayor Millican") testified that he is the spouse of the plaintiff in this matter and the current Mayor of Arcadia. Mayor Millican testified that he had knowledge that Russell did not move into 1120

wanted to live. Russell testified that she slept at her grandmother's house, but would "always go home" to the Jonesboro Road address.

Jonesboro Road until December of 2021. Mayor Millican recalled that when Russell returned to the area from Texas, she "stayed in Hidden Acres" which was "north of town, outside the city limits of Arcadia." Mayor Millican explained that he had personally visited with Dottie Jefferson at her 2910 Ivy Street residence and that Ms. Jefferson told him she stayed alone. Mayor Millican stated that he was familiar with the water records of Arcadia because as mayor, he was ultimately in charge of supervising all employees of the town of Arcadia, including the water and sewer department. Mayor Millican would personally receive the water records and oversaw the day to day operations of Arcadia. Mayor Millican identified P-3 as being a copy of the December 8, 2021, "deposit slip," showing the deposit paid by Russell to begin water service in her name at 1120 Jonesboro Road.

On cross-examination, Mayor Millican testified that from his understanding no one lived at 1120 Jonesboro Road prior to Russell because in December the "landlord" or owner of the property, whose name he could not recall, "came in the city hall and said she was about to rent it out to Lashondra Russell." Mayor Millican admitted that there was water service at 1120 Jonesboro Road prior to it being placed in Russell's name, but testified that "it wasn't much usage at that address," based upon "our water usage report." Mayor Millican stated that the owner of the property paid the bill prior to Russell because the water bill was in their name.

Mayor Millican also testified that "our average water customer uses 1,000 gallons a month, 1,000 to 3,000 gallons a month of water," and that the minimum water charge was $21 whether or not a customer used any water. Mayor Millican further stated that this minimal amount was recently

3

changed to $30.[4]  Russell objected to Mayor Millican's testimony regarding the average monthly usage on grounds that as mayor he was not qualified to testify about this fact.  Millican argued that Mayor Millican was "over the water department" as well as the day-to-day operations of Arcadia and based upon his experience, had knowledge of the household average usage of water in the town.  The trial court overruled Russell's objection to Mayor Millican's testimony.[5]

On rebuttal, Mayor Millican also identified P-7 (introduced into evidence without objection) as a copy of the "water history" of 1120 Jonesboro Road from September of 2020 through December 2, 2021.  Mayor Millican was able to confirm that prior to December of 2021, the water bill was in Rosie Gipson's name which was found "at the top on the customer water history" of P-7.  From his review of P-7, Mayor Millican also testified that in January of 2021, the water usage at 1120 Jonesboro Road was 20 gallons.  He further testified that in the remaining months of 2021, the water usage was as follows: February-20 gallons, March-2 gallons, April-108 gallons, May-10 gallons, June-10 gallons, July-15 gallons, August-5,543 gallons, September-4 gallons, October-14 gallons, and November-4 gallons.

On cross-examination, Mayor Millican testified that he came up with the average monthly gallon usage based upon information obtained from the Louisiana Rural Water Association which had "teamed up with our certified level four operator," and performed average collections on residential usage

---

[4] Mayor Millican identified P-6, as a copy of the new city ordinance which changed the monthly rate schedule for minimum water usage.

[5] In her testimony, Angelica Millican testified that she lived and was registered to vote inside the city limits of Arcadia, and had filed the challenge to Russell's candidacy. Millican also testified that she traveled daily on Jonesboro Road and did not see anyone living at 1120 Jonesboro Road prior to December of 2021.

within the city limits of Arcadia. Mayor Millican also testified that he went to "class every year" but was not a certified operator. Mayor Millican stated that he did not "think you could survive off forty gallons of water," and that he probably drank that amount in a month. Mayor Millican further testified that the July water usage of 5,543 gallons resulted from a major water leak because he had never seen a "jump like that from 15 gallons to 5,000 gallons within a month."

Eddie Holmes, the Bienville Parish Clerk of Court, identified P-5 as a certified copy of a judgment of possession from the "Succession of Rosie Marie Gipson" who died on March 21, 2020. The judgment recognized Trudy Clark as the universal legatee of Ms. Gipson on November 16, 2021, and sent Clark into possession of Gipson's property which included the 1120 Jonesboro Road address.

In rebuttal to Millican's case, Russell offered the following additional testimony. Russell conceded that when she moved into the 1120 Jonesboro Road address in January of 2021, the utilities were in the name of Rosie Gipson, a friend of the family Russell knew for quite a while. Russell rented the property from Trudy Clark, who did not live in the home with Gipson, but cared for her weekly. According to Russell, Clark "wanted someone to be in the home and I agreed to stay there." Russell testified that she met Clark at Gipson's funeral and that Clark "just kept trying to lease the property and when she got ready to lease it, she let me know." Russell testified that the utilities were never in Clark's name and that she "switched" the utilities in her name in December of 2021. Before that time, Russell paid Clark for the utilities and Clark would then pay the utility bills. Russell testified that she did not put the water services into her name until December

5

of 2021, when she was "instructed by Ms. Trudy that" she "needed to have it changed over" or she would incur a higher fee for the water bill. Russell also changed the "light bill" into her name in December of 2021 for that same reason.

When questioned about the specific water usage at the home, Russell claimed that in August of 2021, she lived at the Jonesboro Road address. During that month, Russell was not sure if she took a shower there or would have used more than four gallons of water. Russell could not say whether she flushed the toilet or took a bath in September of 2021 to use more than fourteen gallons of water. Russell offered only that "all my water bill is always the minimal usage."

Russell identified D-1 as a "copy" of her lease agreement on the 1120 Jonesboro Road home, between her and an individual named "Tommie Clark." Although D-1 was never entered into evidence, Russell identified the document as the lease agreement that she purportedly signed with Trudy Clark on January 21, 2021.[6]

On re-direct examination, Russell would only admit that in July of 2021, the P.O. Box had "lapsed," but she insisted that it had been open from 2019 through 2022.

Felicia Russell, Russell's mother, testified that she saw her daughter daily. She explained that Rosie Gipson was her aunt and that Trudy Clark was Gipson's sister. Felicia Russell recalled that Gipson died sometime in 2019 or 2020 and lived at 1120 Jonesboro Highway. She confirmed that

---

[6] Millican objected to the introduction of the lease into evidence without the testimony of Trudy Clark. The trial court ruled that Russell could "testify that she signed it" but did not allow the lease to be introduced into evidence without the testimony of Clark because the document was not notarized or witnessed. No proffer of the document was made and Russell does not challenge that ruling on appeal.

Trudy Clark took care of Ms. Gipson and that Russell knew Clark from "seeing her there visiting Rose." Felicia Russell testified that Russell had been at 1120 Jonesboro Highway for "maybe a year and [a] half," because she lives in Arcadia too and "stayed [at 1120 Jonesboro Road]" for six months after December of 2021, while repairs were done to her own home. Felicia Russell knew that Clark and Russell had an agreement about "the house" which is in the city limits.

Upon completion of the presentation of evidence and testimony, the trial court ruled as follows:

> I've listened to the testimony and evidence presented. Mrs. Russell, the defendant in this matter, was the first one to be called as a witness. I was, um, disturbed by the fact that she couldn't remember certain days. For example, she couldn't remember when she graduated from college and she finally did realize it was 2011. I mean, I can remember I graduated high school, the year, when I graduated from Tech, when I graduated from law school and I'm a lot older that Ms. Russell is. So, -- and then she couldn't when she, said when she left Dallas, when she arrived in Dallas. She said--or where did you live in Dallas--well, Dallas is big. Well, I know it's big but between 2011 and 2019 or 20, you'd remember some place or what part of Dallas you actually lived in. She couldn't remember when she went to Canada. She said about six months and she couldn't remember when she got back and . . . I was just . . . that disturbs me that she seemed to be very evasive about where she lived during that period of time. Also, she says that, um, she changed her voting registration--or it came out she changed her voting registration--April 29, 2022. Her voting registration, prior to that, it was in Hidden Acres. We asked about or she was questioned about her driver's license, what the address was on her driver's license. She said she didn't bring her driver's license with her. Uh, she says that, um. But she drove her[e] today. If she lives on the Jonesboro Road, we had many breaks. She could have gone back and got her driver's license, to show what the driver's license was.
> . . . .
>
> Um, she--the controversy over the lease agreement with Trudy Clark. Trudy Clark was not called as a witness, um, to say that she definitely signed the lease, that it was a lease agreement that they both signed. I noticed on the lease agreement--that was not entered into evidence, but I asked to see it. When I

examined it, it was not a--you don't have to have it notarized and it doesn't have to be witnesses but it would be a better document if it was notarized and witnesses. Um, it was not filed of record. Not that that makes it any less valid, but it would be purport to show that, you know if it was it would be self-proving, if that was the case, if she--it was notarized before a notary and two witnesses. Again, she did not come to testify about, uh, whether that's her signature or that she did in fact have an agreement with the defendant. Um, Mayor Millican testified about the new ordinance regarding the um, average water usage. He gave the water history of this particular place, which was very . . . it was not hardly any water use until, um December of 2021. Um, all those matters indicate to me that she was not living at the house at the time that--until December of 2021, which would not make her a resident of the town within the one-year period prior to qualifying. So, therefore, that evidence and that testimony, I'll find that she is disqualified to run for the mayor of Arcadia.

On August 2, 2022, the trial court signed a written judgment disqualifying Russell as a candidate for the office of mayor of Arcadia. Russell timely appealed and the record was lodged with this Court on Friday, August 5, 2022. This matter has been resolved by this Court in strict compliance with La. R.S. 18:1409.

## DISCUSSION

On appeal, Russell argues that the trial court's determination that she did not meet the residency and domicile qualification for mayor of Arcadia was clearly wrong. Russell maintains that the evidence was sufficient to show that she had established a domicile in Arcadia on January 1, 2021. Russell also argues that the water records should not be admissible because Mayor Millican was not the custodian of the records. In brief, appellee Millican seeks frivolous appeal damages.

*Law*

The qualifications for mayor are set forth in La. R.S. 33:384, which provides the following:

8

The mayor shall be an elector of the municipality who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.

When the qualifications for an office include a length of domicile requirement, the candidate shall meet that qualification notwithstanding any other provision of law to the contrary. La. R.S. 18:451; *Thebeau v. Smith*, 49,665 (La. App. 2 Cir. 9/8/14), 148 So. 3d 233; *Morton v. Hicks,* 46,991 (La. App. 2 Cir. 9/28/11), 74 So. 3d 268, *writ denied,* 2011-2140 (La. 9/30/11), 71 So. 3d 297. A qualified elector may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote. La. R.S. 18:1401(A). An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on specific grounds which may include that the defendant does not meet the qualifications for the office he seeks in the primary election. *See* La. R.S. 18:492.

Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. *Landiak v. Richmond*, 2005-0758 (La. 3/24/05), 899 So. 2d 535; *Russell v. Goldsby*, 2000-2595 (La. 9 /22/00), 780 So. 2d 1048. It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy. *Landiak v. Richmond, supra*. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections as to promote rather than defeat candidacy. Any doubt concerning the qualifications of a candidate should

9

be resolved in favor of allowing the candidate to run for public office.  *Id*.

Although a plaintiff challenging a candidate's qualifications bears the

burden of proving that the candidate fails to meet the requirements, once the

party bearing the burden of proof has established a *prima facie* case, the

burden shifts to the opposing party to present sufficient evidence to

overcome the other party's *prima facie* case.  *Thebeau v. Smith*, *supra.*

La. R.S. 18:451, relative to qualifications of candidates, specifically

requires that when the qualifications for an office include a residency or

domicile requirement, a candidate shall meet the established length of

residency or domicile. As is evident from the use of the word "shall" in the

above statute, the requirement is mandatory.  *Landiak v. Richmond, supra.*

The terms "residence" and "domicile" are legal terms that are not

synonymous.  A person can have several residences, but only one domicile.

A person's domicile is the place of his habitual residence.  La. C.C. art. 38.

According to La. C.C. art. 44, domicile is maintained until acquisition of a

new domicile.  Ultimately, domicile is an issue of fact that must be

determined on a case-by-case basis.  *Landiak v. Richmond, supra.*  Louisiana

case law has traditionally held that domicile consists of two elements,

residence and intent to remain.  Determination of a party's intent to change

his or her domicile must be based on the actual state of the facts, not simply

on what the person believes them to be.  *Id*.  Proof of one's intent to

establish or change domicile depends on the circumstances.  *Thebeau v.

Smith*, *supra.*

Since domicile is generally defined as residence plus intent to remain,

a party's uncontroverted testimony regarding his intent may be sufficient to

establish domicile, in the absence of any documentary or other objective

evidence to the contrary. However, when documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. *Landiak v. Richmond, supra.* Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. Obviously, the more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence. *Landiak v. Richmond, supra.*

The district court's factual findings regarding domicile and residence are subject to manifest error review. In order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Thebeau v. Smith*, *supra.*

*Analysis*

After complete review of the record in this matter, we discern no manifest error in the trial court's disqualification of Russell. We find the evidence and testimony presented by Millican sufficient to establish a *prima*

*facie* case that Russell should be disqualified. That evidence included documentation showing that Russell did not change her voter registration to Arcadia until April 29, 2022, or establish water and electricity service in her name at the 1120 Jonesboro Road residence until December of 2021. The evidence also shows that Clark did not become owner of the property in question until November 16, 2021, and therefore would not have arguably been legally able to rent the property to Russell until after that time. Of course, no testimony from Clark was presented at trial. The testimony of Mayor Millican regarding his conversation with the "owner of the home" at 1120 Jonesboro Road in December of 2021, corroborates the fact that Russell did not begin renting the home from Clark until December of 2021. The 2021 water records of 1120 Jonesboro Road also supplied compelling evidence to support Millican's position. Those records showed overall token water usage throughout 2021, the year that Russell claimed to have lived in the house. Russell's challenge to the admissibility of these water records on appeal is without merit. A close reading of the record before this Court shows that Russell actually lodged no objection to the introduction of P-7 into evidence. Rather, Russell objected to Mayor Millican's testimony regarding monthly average water usage. Even so, one method of authenticating documents is through the testimony of a witness with knowledge of what the document is, where it comes from, and how it is kept. La. C.E. art. 901 (B)(1); *State v. Fontenot,* 618 So. 2d 915, (La. App. 1 Cir. 1993), *writ denied*, 623 So. 2d 1332 (1993). Here, Mayor Millican twice testified that as mayor of Arcadia, he was familiar with the water records as part of his responsibilities as mayor and was in fact in charge of the employees of the water department and personally received the water

records. This testimony satisfies the constraints of La. C.E. 901.

Additionally, this Court has held that a lay witness can give opinion testimony based on his training, investigation, perception of the scene, and observation of physical evidence. *Sealy v. Brown*, 53,541 (La. App. 2 Cir. 2/4/20), 291 So. 3d 290, 304, *writ denied*, 2020-00226 (La. 2/7/20), 292 So. 3d 60.

Otherwise Russell's case in rebuttal consisted mainly of her own self-serving testimony, which the trial court rejected, noting her failure to bring her driver's license to court, failure to admit the lease in question into evidence, and inability to recall relevant dates at issue. Russell's sole witness provided no persuasive testimony, and her documentary evidence regarding the P.O. Box provided insignificant proof of where she actually resided or was domiciled. For these reasons, we find that Russell has failed to present sufficient evidence to overcome Millican's *prima facie* case. The testimony adduced at the hearing, coupled with the documentary evidence, clearly supports the ruling made below.

*Frivolous Appeal Damages*

In brief to this Court, appellee Millican has made a request for frivolous appeal damages with attorney fees. Damages for frivolous appeal are allowed only when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question, or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. *Sellar v. Nance*, 54,617 (La. App. 2 Cir. 3/1/22), 336 So. 3d 103. The proper procedure for an appellee to request frivolous appeal damages is to file either an answer to the appeal or a

cross appeal. La. C.C.P. art. 2133; *Doe v. Lewis*, 2020-0320 (La. App. 4 Cir. 12/30/20), 312 So. 3d 1165; *Wied v. TRCM, LLC*, 30,106 (La. App. 2 Cir. 7/24/97), 698 So. 2d 685. Since a brief constitutes neither, an appellee cannot recover frivolous appeal damages if the damages are first requested in brief. Because she did not separately appeal or answer the appeal, Millican is not entitled to frivolous appeal damages.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Appellee Millican's request for frivolous appeal damages is denied. Costs of this appeal are assessed to Russell.

**AFFIRMED; FRIVOLOUS APPEAL DAMAGES DENIED.**

14

**HUNTER, J., concurring.**

After reviewing this record, I concur in affirming the judgment disqualifying the candidacy of LaShondra Russell.

A person objecting to candidacy bears the burden of proving that the candidate is disqualified. *Nocito v. Bussey*, 2020-0986 (La. 8/15/20), 300 So. 3d 862. Once the party objecting to a candidacy has established a prima facie case the candidate is disqualified, the burden of proof shifts to the party opposing the disqualification to rebut the evidentiary showing. *Sealy v. Brown*, 53,541 (La. App. 2 Cir. 2/4/20), 291 So. 3d 290. Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. *Cleveland v. Williams*, 49,64 (La. App. 2 Cir. 9/8/14), 148 So. 3d 229.

In this case, the petitioner presented evidence of minimal water usage at the 1120 Jonesboro Road address indicating defendant did not actually reside at the address. In light of Mayor Millican's role as the chief administrative officer of the city, the trial court did not err in allowing the mayor to testify the water usage reflected in the city's records was less than the average use of inhabited dwellings in Arcadia. Based on the testimony and documentary evidence presented, the petitioner satisfied her burden of proving a prima facie case defendant is disqualified, thereby shifting the burden to defendant to rebut the petitioner's proof.

In response, defendant was unable to provide a persuasive explanation as to why the water usage was so low at the address or why she had changed her voter registration only a few months prior to the qualifying period. Thus, even giving defendant every benefit of the doubt regarding her qualifications as a candidate, defendant failed to produce sufficient evidence

1

to rebut the petitioner's evidentiary showing defendant had not resided at the Jonesboro Road address for the requisite length of time.

Consequently, I must conclude the trial court did not err in finding defendant is disqualified as a candidate for mayor of Arcadia.